PEOPLE'S TOBACCO CO., Limited, v. AMERICAN TOBACCO CO. et al.†

(Circuit Court of Appeals, Fifth Circuit. May 3, 1909.)

No. 1,830.

MONOPOLIES (§ 28*)—CONSPIRACY IN RESTRAINT OF INTERSTATE COMMERCE—ACTION FOR DAMAGES.

A petition to recover threefold damages for injury to plaintiff's business in interstate and foreign commerce, under Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), states a cause of action, where it alleges that plaintiff was a manufacturer of tobacco which it sold in interstate and foreign commerce, and facts showing that defendants conspired to render its business unprofitable and ruin and destroy the same through competing corporations, which they secretly controlled, by enticing away its workmen, by compelling it to pay more than the normal price for leaf tobacco, and to adopt unnecessary and expensive means to sell its products, and that such conspiracy was carried out to the damage of plaintiff in a sum stated; such acts constituting both a conspiracy to restrain interstate commerce and an attempt to monopolize the same, in violation of sections 1 and 2 of the act.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Omitting the several letters and other exhibits referred to, the following are all the averments and statements of the plaintiff's petition filed in the court below:

"The petition of the People's Tobacco Company, Limited, a corporation organized under and created by the laws of the state of Louisiana, domiciled in the parish of Orleans, state of Louisiana, and a citizen of said state, in the Eastern district thereof, and a resident of said state, through J. Oury, its president, respectfully represents:

"That the American Tobacco Company, a corporation organized under and created by the laws of the state of New Jersey, and a citizen of the state of New Jersey, the Craft Tobacco Company, Limited, a corporation organized under and created by the laws of the state of Louisiana, and a citizen of Louisiana, domiciled and doing business in the parish of Orleans, in said state, and Augustus Craft, a citizen of the state of Louisiana, residing in New Orleans, La., within the Eastern district of the state of Louisiana, are indebted unto your petitioner, in solido, in the sum of $234,999 for this, to wit:

"That your petitioner was organized and created under the laws of the state of Louisiana on June 20, 1899, by an act passed before Edward Dinkelspiel, a notary public for the parish of Orleans, La., for the purposes to be hereinafter set forth:

"That on or about the 7th day of January, 1890, the American Tobacco Company was organized and created under the laws of the state of New Jersey.

"That a corporation known as the American Tobacco Company was organized and created for the purpose of taking over the control and controlling interest in certain corporations and firms and absorbing the business of said concerns; said corporation being formed with a capital stock of $25,000,000, being $10,000,000 of preferred stock and $15,000,000 of common stock, and said corporation taking over the business of the following concerns and distributing its stock therefor as follows:

| | Preferred. | Common. | Total. |
|---|---|---|---|
| Allen & Ginter | $3,000,000 | $4,500,000 | $7,500,000 |
| W. Dukes' Sons & Co | 3,000,000 | 4,500,000 | 7,500,000 |
| Kinney Tobacco Co | 2,000,000 | 3,000,000 | 5,000,000 |
| W. S. Kimball Co | 1,000,000 | 1,500,000 | 2,500,000 |
| Goodwin & Company | 1,000,000 | 1,500,000 | 2,500,000 |

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied June 7, 1909.

"Your petitioner shows: That the articles of incorporation declare the purpose of the company to be to carry on its operations in all the other states and territories of the United States and in Great Britain and all foreign countries.

"That the said charter was amended in 1901, and by said amendment the American Tobacco Company was given the power to guarantee the securities of other corporations. That the first board of directors was composed of James B. Duke, B. N. Duke, George Arents, and George W. Watts, who have remained thereon continuously, and William H. Butler, Charles G. Emery, Lewis Ginter, Francis S. Kinney, William S. Kimball, and John Pope. That each of said directors owned an interest and participated in managing one of the acquired concerns. That about 1891 and subsequently the American Tobacco Company began to enter into contracts, combinations, and conspiracies in unlawful restraint of trade in leaf tobacco and manufactured tobacco and cigarettes, oppressing with ferocious competition and unfair trade measures, forcing competitors to sell their manufactories, business, trade brands, and the controlling interest in such rival corporations and good will, and using the names of said corporations for the purpose of organizing more successfully against its remaining competitors, and thus fighting and destroying them. That said American Tobacco Company as then organized, called in this petition the old American Tobacco Company, and the American Tobacco Company as now organized, concealed and conceal its ownership and control of acquired companies and brands for the purpose of crippling existing competitors. That the charges made against the American Tobacco Company in this cause are also true of the Consolidated Tobacco Company, and the Continental Tobacco Company, mentioned hereinafter.

"Your petitioner shows that the Continental Tobacco Company was formed in December, 1898, with a capital of $75,000,000, which capital stock was increased on April 21, 1899, to $100,000,000. That the charter of said corporation recited:

" 'The objects for which this corporation is formed are to cure leaf tobacco, and to buy, manufacture, and sell tobacco in any and all its forms, and to erect and otherwise acquire factories and buildings, establish, maintain, and operate factories, warehouses, agencies, and depots for the storing, preparation, cure, and manufacture of its tobacco, and for its sale and distribution, and to transport or cause the same to be transported as an article of commerce, and to do any and all things incidental to the business of trading and manufacturing aforesaid.

" 'This corporation shall have the power to conduct its business, or any portion of it, in all other states and territories, colonies and dependencies of the United States, and in Great Britain and Canada, and all other foreign countries, to have one or more offices out of the state of New Jersey, and to hold, purchase, lease, mortgage, and convey real and personal property out of the state of New Jersey as well as in said state. That said charter was amended on or about April 20, 1901, and by said amendment the corporation was given the further power to indorse or otherwise guarantee the principal or interest, or both, of and on any bonds, debentures, or promissory notes that may be made, issued, or uttered by any corporation in which said company has a substantial interest as stockholder, provided that authority for such indorsement or guaranty be first obtained from the board of directors by resolution having the favorable vote of at least two-thirds of the whole board. That James B. Duke and John B. Cobb were among the incorporators with James B. Duke as president.'

"That in June, 1901, in pursuance of the general scheme and purposes heretofore described to secure the retirement of competition, hinder and restrain foreign and interstate commerce in tobacco and its products, exclude others therefrom, and acquire therein a monopoly, the directors, officers, and stockholders of the American Tobacco Company, and the Continental Tobacco Company, caused to be organized under the laws of New Jersey the Consolidated Tobacco Company, with a capital stock of $30,000,000, which capital was afterwards increased to $40,000,000.

"The objects for which the said corporation was formed is shown by the charter to be as follows:

" 'To dry and cure leaf tobacco, to buy, manufacture, sell and otherwise deal in tobacco and the products of tobacco in any and all forms.

" 'To construct or otherwise acquire and hold, own, maintain and operate warehouses, factories, offices and other buildings, structures and appliances for the drying, curing, storing, manufacture, sale and distribution of tobacco and its products. To purchase or otherwise acquire and hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of the shares of capital stock of, or any bonds, security or other evidences of indebtedness created by any other corporation of this or any other state or government, and to issue its own obligations in payment or in exchange therefor, or for any purpose of its incorporation, and to secure such obligations by pledge or mortgage under deed of trust or otherwise of the shares of capital stock or bonds, securities or other evidences of indebtedness so acquired, or of any other property of the corporation.

" 'To guarantee dividends on any shares of the capital stock of any corporation in which this corporation has any interest as stockholder, and to indorse or otherwise guarantee the principal and interest, or either, of any bonds, securities or other evidences of indebtedness created by any corporation in which this corporation has such an interest, provided that authority for any such indorsement or guarantee be first given by resolution adopted by at least two-thirds of the whole board of directors of this corporation.

" 'To carry on any business operation deemed by the corporation to be necessary or advisable in connection with any of the objects of its incorporation or in furtherance of any thereof, or tending to increase the value of its property.   *   *   *'

"The said consolidated Tobacco Company was given by its charter the right to do business in all states and territories of the United States and in foreign countries. The stock was subscribed by few individuals closely associated with the management of the old company. James B. Duke was at all times president, Thomas F. Ryan, John B. Cobb, and C. C. Dula were vice presidents, and the board of directors was composed of directors of the old company.

"Your petitioner further shows that on or about September 9, 1904, the management of the said American Tobacco Company, the Consolidated Tobacco Company, and the Continental Tobacco Company formed an agreement by which they were to take over the interest and business of each of the said named companies, and at the same time take over their controlling interests in all subsidiary corporations, the whole to be contained in and owned by a corporation known as the American Tobacco Company, one of the defendants in this case, all of which will more fully and at large appear by reference to a copy of said agreement annexed to this petition and made part hereof, marked 'Exhibit A.'

"That said American Tobacco Company was formed into a corporation in October, 1904, with James B. Duke as president, and John B. Cobb, C. C. Dula, William R. Harris, and Percival S. Hill, vice presidents. That all the property of the merged companies became the property of the American Tobacco Company now operating branches under its own name and in the name of different corporations owned and controlled by it in Richmond, Va., Newport News, Va., New Orleans, La., New York City, Louisville, Ky., and other cities. That said American Tobacco Company, acting in its own name, owns and controls a great number of incorporate institutions and dictates the election of their directors. That defendant and all subsidiary corporations are engaged in interstate and foreign commerce.

"Now your petitioner shows that your petitioner was organized as aforesaid for the purpose of carrying on a general cigar, cigarette, and tobacco business, including manufacturing, buying, selling, and exporting tobacco to foreign countries, and carrying on of said business throughout the world, and since its organization has carried on an extensive interstate and foreign business, selling its products in New York, Texas, Illinois, New Mexico, Arizona, and in the Republic of Mexico.

"Your petitioner further shows: That among its stockholders was Augustus Craft, who owned 50 shares of the capital stock in your petitioner, and was a director of your petitioner, and who afterwards acquired one share of stock from one Grabenheimer, thus becoming the owner of 51 shares, or a controll-

ing interest in your petitioner. That on or about June 9, 1900, said Craft sold to J. Oury 25 shares of the capital stock of the People's Tobacco Company, Limited, as your petitioner was losing money in getting its enterprise under way, and on or about the 21st day of November, 1902, said Craft having familiarized himself with your petitioner's business, sold to J. Oury, president of your petitioner, his remaining 26 shares. That shortly after the said Craft had parted with his interest in your petitioner's business, conspiring with and acting under the advice and controlling management of the Consolidated Tobacco Company, the Continental Tobacco Company, and the old American Tobacco Company. before the consolidation of the said three companies, and for the purpose of defeating your petitioner's business, and in the interest of the said companies, which were consolidated for the purpose of restraining trade and cutting off competition by every unlawful means and at the suggestion of the said companies and of Caleb C. Dula, who with Percival S. Hill were the principal agents of the said companies for the purpose of destroying rival concerns, organized the Craft Tobacco Company, Limited, which corporation was created on or about the 14th day of May, 1903, under the laws of the state of Louisiana by notarial act before Felix J. Dreyfus, notary public. That the business was to become a going concern when 50 shares were subscribed. That said Craft subscribed for 42 shares of stock; Everett G. Lawrence, 2 shares; Louis P. Rice, 2 shares; Pearl Wight, 1 share; J. Watts Kearney, 1 share; J. A. Blaffer, 1 share; and Luther Sextin, 1 share. That on May 15, 1903, said Craft wrote to Caleb C. Dula that he held $10,000 of the stock and that the whole $50,000 was paid in and in bank.

"Now your petitioner alleges and charges: That the $50,000 or three-fourths thereof was furnished by the Continental Tobacco Company, the Consolidated Tobacco Company, and the old American Tobacco Company, or one of them. Your petitioner shows that the stockholders of said Craft Tobacco Company, Limited, and the directors, except said Craft, were mere figureheads, or persons interposed to deceive the public as to the real ownership of said corporation. That it was provided in the charter of said corporation that the directors could be removed at any time by the stockholders at a meeting called by a majority of said stockholders.

"Your petitioner further shows that the stock in said corporation after the signing of said corporation and the payment of the sums of money subscribed thereto was held in the following proportions: Augustus Craft, 25 per cent.; the Consolidated Tobacco Company, the old American Tobacco Company, and the Continental, or one or two of these companies, owning the remaining 75 per cent., but that it is impossible to say exactly how this stock was held, as the officers of the American Tobacco Company, the successor of the foregoing three companies, deny under oath knowing how the said stock was and is held, but admit that it was controlled by the American Tobacco Company and the composing companies.

"Now your petitioner shows that after the first three years of its creation, through industry and skillful management and extensive advertising, it built up a large business notwithstanding the expenses incidental to starting such business, and after certain losses succeeded in making in the year ending June 15, 1902, the sum of $19,497.36.

"That in the next year, ending June 15, 1903, owing to your petitioner having established a trade, particularly that part of the laboring class belonging to unions, as your petitioner employed none but union men and catered to that particular class. your petitioner's net profits for the said year increased to the sum of $40,282.83. That it was then that the Consolidated Tobacco Company, the Continental Tobacco Company, and the old American Tobacco Company, or one or two of them, conspired as aforesaid with said Augustus Craft for destroying said petitioner's business, and created the said Craft Tobacco Company, Limited. That said companies, or one or two of them, and the said Craft undertook the formation of the said Craft Tobacco Company, Limited, to take away your petitioner's hands, and on or about May 6, 1903, said Craft communicated with petitioner's foreman, tobacco cutter, and engineer, and on May 21, 1903, notified Percival S. Hill, in charge of said companies, that he had the head engineer and foreman of the People's Tobacco Company with him and expected to draw his labor supply from the People's. That said com-

pany has also attempted and undertook to cause strikes at said time among your petitioner's employés. That said Craft, through the bribery of the labor agent, by giving him a commission upon machinery, undertook to deceive the labor unions of New Orleans into the belief that he was in no wise connected with said companies now consolidated with the American Tobacco Company; the said labor unions at said time having already refused to have anything to do with said companies as being monopolies or trusts in restraint of trade. That at said time your petitioner was the only tobacco company in New Orleans which had the union trade and the union label, and the said three abovementioned companies, to wit, the old American Tobacco Company, the Continental Tobacco Company, and the Consolidated Tobacco Company, were forbidden the use of the union label.

"Your petitioner shows that it was understood between the American Tobacco Company and the said Augustus Craft that said Craft was not to interfere with the Louisiana Tobacco Company and the Irby Tobacco Company, but was to confine his business to securing your petitioner's customers.

"Your petitioner further shows: That, as soon as the said Craft Tobacco Company had secured the union label and union labor as aforesaid in 1903, the American Tobacco Company, the Continental Tobacco Company, and the Consolidated Tobacco Company, or one or two of them, began to arrange, and did arrange, through their various subsidiary corporations, particularly the Craft Tobacco Company, Limited, for giving rebates to customers by giving a package of cigarettes for the return of 20 covers. That, the said acts of said companies having been forbidden by governmental officials, they put in prize coupons in the cigarettes sold by the said Craft Tobacco Company, Limited, thus holding out a further inducement to your petitioner's customers to buy tobacco from them through the Craft Tobacco Company, Limited, and after all of said acts and other acts hereinafter mentioned on the part of said company, and by reason thereof, your petitioner's business fell off from $40,282.83, net profit from July 3, 1902, to June 1, 1903, to $20,563.40, from June 1, 1903, to June 1, 1904; and to $13,934.91 from June 1, 1904, to June 1, 1905; and to $8,017.59 from June 1, 1905, to June 1, 19 3. That on or about December 14, 1904, the American Tobacco Company, through Nathaniel Dorth and others, conspired to destroy and did destroy in same manner your petitioner's black leaf business.

"Your petitioner shows: That in June, 1905, your petitioner, realizing that its business was being driven out by the Craft Tobacco Company, Limited, particularly, and by the Louisiana Tobacco Company and the Irby Tobacco Company, both of said corporations being controlled and owned by defendant American Tobacco Company and its comprising companies, but at that time knowing of no conspiracy of collusion between the said Craft Tobacco Company, Limited, the Continental Tobacco Company, the Consolidated Tobacco Company, and the old and new American Tobacco Companies, began issuing, in self-defense, one-quarter cent coupons in its tobacco packages and half-cent coupons in its cigarettes in June, 1905. That in order to compete with said companies from June, 1905, to December, 1907, your petitioner spent on said coupons the sum of $61,074.00, but that through the use of said coupons, and because of the advocacy of high license by Augustus Craft in the city council, of which he was a member, the business of the Craft Tobacco Company, Limited, began to fall off, and, its usefulness to said American Tobacco Company being at an end, your petitioner is informed and believes and charges that the American Tobacco Company, made defendant in this case, in the latter part of the year of 1907, sold its stock back to Augustus Craft.

"Your petitioner shows: That its expenses for sale, and outside of the cost of manufacturing, amounted during the fiscal year from July, 1902, to July, 1903, to $9,617.18. That said expenses from June 1, 1903, to June 1, 1904, amounted to $7,012.15. That its expenses from June 1, 1904, to June 1, 1905, amounted to $9,948.31. That its expenses from June 1, 1905, to June 1, 1906, amounted to $22,451.90. That its expenses from June 1, 1906, to June 1, 1907, amounted to $24,751.34. That these expenses do not include the expenses of manufacture, among which is included the cost of coupons, already stated.

"Your petitioner shows that the management of the Craft Tobacco Company, Limited, was left by the corporation or corporations owning a controlling in-

terest therein to Caleb C. Dula and Percival S. Hill for the better carrying into effect their illegal operations, schemes, and combinations against the interstate commerce, and that the acts of said Hill and said Dula were the acts of the corporation.

"Your petitioner further alleges that, where it is charged in this petition that said P. S. Hill or C. C. Dula did or performed any act, it is meant and charged that the said Percival S. Hill and Caleb C. Dula, acting for and in behalf of the Continental Tobacco Company, the Consolidated Tobacco Company, or the old American Tobacco Company, or after the month of October, 1904, were acting in behalf of the interest of the American Tobacco Company made defendant in this case.

"Your petitioner shows: That the Continental Tobacco Company in 1903 secretly bought out the Pinkerton Tobacco Company at Zanesville, Ohio, and by secret correspondence, letters being addressed by John W. Pinkerton, the manager of the Pinkerton Tobacco Company, and its president, to the American Tobacco Company under the assumed name of J. P. Williams, Madison Square, New York. That, in order better to carry out their purposes, often herein described, certain companies belonging to the Continental Tobacco Company, the Consolidated Tobacco Company, and the old and new American Tobacco Company, among others, the American Snuff Company, the American Cigar Company, R. J. Reynolds Tobacco Company, R. A. Patterson Tobacco Company, Standard Snuff Company, Pinkerton Tobacco Company, F. R. Penn Tobacco Company, Night & Day Tobacco Company, Wells Whitehead Tobacco Company, Nall & Williams Tobacco Company, and others, were made to maintain separate purchasing and sales departments with agents to purchase and solicit trade for them in many different states, and through them the said companies buy supplies of leaf tobacco and sell and distribute their products as a part of interstate trade and commerce, and that all said companies, either directly or indirectly, report to the American Tobacco Company, which, under agreements and a general plan of operation chiefly through P. S. Hill and C. C. Dula, decide how and where said companies may operate and fix prices stifling interstate competition.

"Your petitioner further shows: That through the said R. J. Reynolds Tobacco Company, the American Tobacco Company, and its composing companies, particularly the Consolidated Tobacco Company and the Continental Tobacco Company, have acquired the majority of the capital stock of the Liipfert Scales Company, preserving its authorization and corporate name, but in combination and agreement refrain from competing with said company, restraining interstate commerce, and intending to monopolize same. That said R. J. Reynolds Tobacco Company holds the majority of capital stock of the Andrews & Forbes Company and of the Amsterdam Supply Company, and other companies for the same purpose.

"Your petitioner further shows: That in February, 1903, the Continental Tobacco Company secretly acquired the control of Nall & Williams Tobacco Company, a Kentucky corporation long engaged in Louisville, Ky., successfully in interstate commerce and in leaf manufactured tobacco, drying tobacco leaf in different states, and selling, shipping, and distributing the products manufactured therefrom throughout the United States and abroad in competition with said company and the American Tobacco Company. That the owners and persons interested agreed with the American Tobacco Company not to engage in trade and commerce in tobacco or its products. That the separate organization of the acquired company has been preserved, but that the directors have at all times since been selected by the Continental Tobacco Company and the American Tobacco Company, and its business has been conducted under an agreement with them not to compete in the purchase of leaf tobacco or in the sale or distribution of its product and in combination with them and without competition for the purpose and with the effect of restraining interstate commerce and foreign trade and creating a monopoly therein. Said Nall & Williams Company have concealed and denied, and is now concealing and denying, its association with the American Tobacco Company, and has been used by the American Tobacco Company and the Continental Tobacco Company from May, 1903, to the latter part of May, 1907, as agent of supply to destroy competition. That said company during said time furnished to the Craft Tobacco Company

certain brands of tobacco at a low rate, lower than said tobacco could be bought elsewhere, for the purpose of destroying your petitioner's business, which not only extended to Louisiana, but to all of the adjoining states and foreign countries, all of which will more fully appear by reference to copy of an extract of a letter of Augustus Craft to C. C. Dula, dated May 6, 1903, and the extract of a letter from Augustus Craft to Percival S. Hill, dated August 21, 1903, to be hereafter annexed to this petition, and made part hereof for greater certainty.

"Your petitioner shows that the tobacco furnished to the Craft Tobacco Company was furnished by the present American Tobacco Company and Continental Tobacco Company and the Consolidated Tobacco Company, from the Nall & Williams Tobacco Company, their agents as aforesaid at Louisville, Ky., and from other states, at a cheaper rate than your petitioner, who is also engaged in interstate commerce, could buy on the market, said discriminating rate being made for the purpose of injuring your petitioner, who was also engaged in interstate commerce, all of which will more fully and at large appear by reference to a copy of a letter dated August 10, 1903, written by P. S. Hill, vice president of the American Tobacco Company and managing director of said company and of the Consolidated Tobacco Company and the Continental Tobacco Company, to be hereafter annexed to this petition, said letter being written to Augustus Craft.

"Your petitioner shows: That defendant's schemes and purposes were conducted in secrecy, and even the correspondence between the said Augustus Craft and C. C. Dula and P. S. Hill, in their capacities as vice president and managers aforesaid, being conducted under an assumed name, the said Craft in 1903 going under the name of Mrs. E. G. Craft, and afterwards of Mrs. Elvira Gustine, and the said P. S. Hill assuming the name and address of Helen v. Simmonds, at 305 Dolphin street, Baltimore, Md., and said Dula assuming the name and address of D. C. Williams, Madison Square Station, New York, all of which will more fully and at large appear by reference to substantial copies of extracts of said letters dated June 8, 1903, September 2, 18, and 23, 1903, from Augustus Craft to P. S. Hill, as agent of said companies, and a letter of C. C. Dula to Augustus Craft of May 14, 1903, and a letter of P. S. Hill, as agent of the American Tobacco Company to Augustus Craft, dated November 7, 1904, to be hereafter annexed to this petition for greater certainty.

"That the old American Tobacco Company, the Continental Tobacco Company, and the Consolidated Tobacco Company, or one or two of them, on or about June 8, 1903, conspired to procure the same kind of cigarette paper as was used by your petitioner, instead of Rizlax, the better to prevent buyers from connecting said Craft Company with said company, all of which will more fully and at large appear from copies of extracts from letters written by Augustus Craft to Percival S. Hill, June 8, 1903, and July 24, 1903. That, when Rizlax paper was used, said Craft and said Dula, on or about May 16, 1903, and before said date, gave out to the public that any one could buy said paper on the market at a reasonable price, all of which will more fully and at large appear by reference to a letter of Augustus Craft to C. C. Dula, dated May 16, 1903, to be hereafter annexed to this petition for greater certainty.

"That the purchase of tobacco by Augustus Craft for the Craft Tobacco Company, Limited, on or about the 7th of November, 1904, and the latter periods, was partially carried on through a broker to prevent the public from gaining knowledge of true ownership or control of the Craft Tobacco Company. That in July, 1903, Percival S. Hill, in his capacity of vice president and managing director and agent in shipping tobacco to the Craft Tobacco Company and other articles, was requested to destroy the marks contained thereon for the same purpose, all of which will more fully and at large appear by reference to copies of letters written by Augustus Craft to Percival S. Hill, dated July 18 and 24, 1903, to be hereafter annexed for greater certainty.

"Your petitioner shows: That at said time, in order to conceal its objects from the public, to wit, the destruction of petitioner's domestic and interstate business, it was planned to have the Irby Tobacco Company, a well-known branch of the American Tobacco Company, to pretend to be opposed to the Craft Tobacco Company, Limited.

"That your petitioner used union labor exclusively in its factory and store, and, as already stated, the unions had long since refused to buy goods that did not contain the union label and to buy of the corporations which now compose the American Tobacco Company, and that one of the principal objects of the Craft Tobacco Company, by defendant and the companies which composed it, was to fight your petitioner by securing said trade, the object being particularly the destruction of a large business which your petitioner had built up in Louisiana and adjoining states and in foreign countries, all of which will more fully and at large appear by reference to letters of Augustus Craft to P. S. Hill, acting as agent aforesaid, dated June 20, 1903, July 17, 1903, July 24, 1903, August 21, 1903, September 23, 1903, copies of extracts of which to be hereafter annexed for greater certainty.

"Your petitioner shows that under the management of the said Hill and said Dula, conspiring with said Craft, the Louisiana Tobacco Company, Limited, owned by defendant and formerly one or more of the companies composing defendant, and the W. R. Irby Tobacco Company, a branch of the American Tobacco Company, owned by defendant and formerly by the Continental Tobacco Company, were kept in ignorance of the purposes or management of the American Tobacco Company, or at least it was so pretended to said Craft, all of which will more fully and at large appear by reference to copy of extracts from letters of Augustus Craft to Percival S. Hill, dated May 21, 1903, and August 21, 1903, and extract from a letter of Percival S. Hill to Augustus Craft, dated July 23, 1903, to be hereafter annexed to this petition and made part hereof for greater certainty.

"Your petitioner further shows that during the year 1903, up to January 1, 1907, and all during the period in which the controlling interest of the Craft Tobacco Company, Limited, was held by defendant and composing companies, or one or two of them, your petitioner's goods were discriminated against in its Louisiana business as well as in its interstate and foreign commerce. Your petitioner alleges and charges: That August Glaudot and H. Guenard were paid by said company, through one Wackerbarth, up to the year 1901, and through agents unknown to your petitioner after said date, not to advertise or expose for sale your petitioner's goods; the said Glaudot receiving his rent free for that consideration. That A. A. Merrick and one Keith and other peddlers received a bonus from the Continental Tobacco Company not to sell petitioner's goods.

"Your petitioner further shows: That the Louisiana Tobacco Company and the Irby Tobacco Company and other agents of defendant and its composing companies were all employed for the same purpose. That the object of the defendant and the composing companies was to drive out your petitioner as a competitor for its local, interstate, and foreign business, and the American Tobacco Company, and the Consolidated Tobacco Company, the Continental Tobacco Company, and the old American Tobacco Company, or one or two of them, furnished the expenses for this purpose and contributed at least a part of the expenses for this purpose, and paid subsidies on the output of the Craft Tobacco Company, Limited, all of which will more fully and at large appear by reference to letters and extracts from letters from Augustus Craft to P. S. Hill, in his capacity as agent as aforesaid, dated August 21, 1903, September 5 and September 23, 1903, and October 6, 1903, to be hereafter annexed to this petition for greater certainty.

"Your petitioner shows that, through all of said acts of the said American Tobacco Company and its composing companies, your petitioner's net profits were reduced in the sum of $78,333, and your petitioner has been damaged and injured through the said unlawful, illegal, and malicious acts of defendant in said sum, and that under the act of Congress of July 2, 1890, known as the 'Sherman act,' your petitioner is entitled to recover threefold damages and the costs of suit, including a reasonable attorney's fee.

"Your petitioner further shows that all of the illegal acts aforesaid of the American Tobacco Company and the composing companies were unknown to your petitioner, and all of the acts of said Augustus Craft and the Craft Tobacco Company, Limited, were unknown to your petitioner, until the 10th day of December, 1907, or some days after said date, when said acts were brought to light in a suit of the United States against the American Tobacco Company and others, now pending in the Circuit Court of the United States for the

Southern District of New York, and that, until said exposure was made in said litigation, your petitioner was in ignorance of proof against said defendant and unable to protect its rights. Your petitioner shows that its sales fell off as aforesaid from the organization of the Craft Company, Limited, on the 14th day of May, 1903, up to the time that your petitioner began to use the coupons and to incur the extra heavy expense thereof, amounting as aforesaid to $61,000, all of which expense for coupons will more fully appear by reference to an itemized statement annexed to this petition and marked 'Exhibit B.'

"Your petitioner shows that the American Tobacco Company is represented in the state of Louisiana and is found in said state, and that W. R. Irby is duly appointed the agent of said company.

"Wherefore your petitioner prays that the American Tobacco Company, the Craft Tobacco Company, Limited, and Augustus Craft be cited to answer this petition, and, after all due and legal proceedings had, that said American Tobacco Company, the Craft Tobacco Company, Limited, and Augustus Craft, be ordered, adjudged, and decreed to pay your petitioner the sum of $234,999, being threefold the amount of damages incurred by your petitioner and suffered by him through the acts of defendant, and for a reasonable attorney's fee, and for costs and all general relief."

Exceptions having been sustained to this petition, the plaintiff filed the following supplemental and amended petition (the exhibits are omitted here):

"The supplemental and amended petition of the People's Tobacco Company, Limited, filed in this case with leave of court first had and obtained, respectfully represents:

"That your petitioner reiterates and reaffirms the allegations contained in its original petition, and further represents:

"That the American Tobacco Company and the Craft Tobacco Company, Limited, and Augustus Craft are indebted unto your petitioner in the sum of $168,926.85 in solido, as damages, which damages, under the act of Congress known as the 'Sherman act,' should be increased threefold.

"Your petitioner further shows that your petitioner, having enjoyed the large business set out in petitioner's original petition, in the independent trade in New Orleans, in the year 1903, had amassed and built up a trade that netted your petitioner, in its business year from June 15, 1902, until June 15, 1903, the sum of $40,282.43.

"That in the succeeding fiscal year ending June 1, 1904, through the illegal acts of defendants, your petitioner lost the sum of $19,719.43. That of this sum $10,495 was caused by the increase in the price of tobacco by the defendants in the following manner, to wit:

"That the said American Tobacco Company (and the old American Tobacco Company and Consolidated Tobacco Company before the formation of the American Tobacco Company) were practically under the same control and management and conspiring together against all independent companies, and particularly your petitioner.

"That said last-named companies, in 1903, and thereafter, secretly controlled individuals, firms, and corporations, carrying on their conspiracy against interstate and foreign commerce under the names of such individuals, firms, and corporations. That among such firms controlled by said Consolidated, Continental, and old American Tobacco Companies, and afterwards, in October, 1904, by the American Tobacco Company, was the Nall & Williams Company of Louisville, and E. J. O'Brien & Company, also of Louisville, Ky.

"That your petitioner purchased most of its tobacco in Louisville through the Louisville Tobacco Warehouse Companies, and also purchased some tobacco in Cincinnati through the Cincinnati Tobacco Warehouse Companies. That said purchases were commonly and usually made by the independent companies in the tobacco business at auction, or on the 'breaks,' as it is commonly called.

"Now your petitioner shows that at said sales your petitioner's brokers were made to pay high prices for its tobacco by defendants, after the formation of the Craft Tobacco Company, Limited, to carry out the object of destroying your petitioner's business, and every facility was given the Craft Tobacco Company, Limited, to buy at a lower rate and to sell at a lower rate than petitioner by means of discounts, rebates, and larger packages.

"That on May 6, 1903, in furtherance of said schemes, Craft wrote to C. C. Dula, in his capacity set forth in the original petition, that he had stopped in Louisville and secured the Nall & Williams account. That on November 7, 1901, Percival S. Hill, in his capacity set forth in the original petition, wrote Craft showing him how to secure tobacco, and that, for the purpose of deceiving petitioner, said Craft was instructed to buy from independent brokers, and on or about June 16, 1903, did buy from J. B. Spurgin & Co., who were acting as brokers for your petitioner.

"And by such means the old American Tobacco Company, the Continental Tobacco Company, and the Consolidated Tobacco Company, and the American Tobacco Company, or one or two of them, damaged your petitioner by bidding high prices on tobacco and causing your petitioner to buy at an increased rate.

"That in petitioner's fiscal year ending June 1, 1905, your petitioner lost the sum of $26,347.92. That of these losses $10,654.55 were due to the increased prices from the same causes.

"That in the fiscal year ending June 1, 1906, your petitioner lost the sum of $32,265.24, and of this sum $12,778.58 was due to the increased prices caused your petitioner by the defendants in the same manner.

"That in the fiscal year ending June 1, 1907, your petitioner lost the sum of $14,514.85 through the same causes, making a total of $62,957.85, through increased prices forced upon your petitioner by defendants.

"Petitioner further shows that it lost in profits of its trade:

| | |
|---|---|
| In the year ending June 1, 1904, the sum of | $ 9,224 43 |
| In the year ending June 1, 1905, the sum of | 15,683 35 |
| In the year ending June 1, 1905, the sum of | 19,486 66 |
| Making a total loss of the sum of | $44,394 44 |

—caused your petitioner by the organization of the Craft Company, Limited, as stated in your petitioner's original petition, by the taking away of your petitioner's trade through rebates in the form of return covers, selling larger packages of tobacco, and unfairly soliciting your petitioner's trade, all of which will more fully appear by reference to an itemized statement of all of your petitioner's expenses, annexed to this supplemental and amended petition, and all of your petitioner's productions, including tobacco, snuff, and cigarettes, from January 1, 1900, to June 15, 1900; from June 15, 1900, to July 1, 1901; from July 1, 1901, to June 15, 1902; from June 15, 1902, to June 1, 1903; from June 1, 1903, to June 1, 1904; from June 1, 1904, to June 1, 1905; from June 1, 1905, to June 1, 1906; from June 1, 1906, to June 1. 1907—annexed to and made part of this petition for greater certainty, marked 'Exhibit E.'

"Your petitioner further shows that the damages caused to your petitioner, by interference with your petitioner's workmen, amount to the sum of $500.

"Your petitioner further shows that in June, 1905, your petitioner was forced, by the Craft Tobacco Company, who began underselling your petitioner by putting in coupons, to put in coupons in the cigarette pack worth one-half cent each, and coupons in tobacco packages worth one-quarter cent each, redeemable in cash by any one presenting same.

"That your petitioner was doing a large and extensive trade without these coupons, until the Craft Tobacco Company, Limited, began to take away from petitioner's business as aforesaid, and was forced, in June, 1905, and afterwards, to spend the sum of $61,071.60, all of which will more fully and at large appear by reference to an itemized statement annexed to petitioner's original petition, marked 'Exhibit B.'

"That your petitioner is entitled to recover from defendants the said sum of $61,071.60.

"Now your petitioner shows: That your petitioner was organized, as stated in its original petition, for the purpose of carrying on a general cigar, cigarette, and tobacco business, including manufacturing, buying, selling, and exporting tobacco to foreign countries and throughout the different states of the United States, and since its organization has carried on an extensive interstate and foreign business, selling its products in New York, Ohio, Illinois, Texas, New Mexico, and in the Republic of Mexico, and many other places.

"That the defendants have been engaged in interstate commerce and in commerce with foreign countries. That all the losses of your petitioner herein

above set forth have been caused by and were the result of conspiracy between the said American Tobacco Company and the component companies above named, Augustus Craft, and the Craft Tobacco Company, Limited, for the purpose of injuring your petitioner in his said business, and in violation of the laws of the United States, and particularly of the act of Congress approved July 2, 1890, and known as the 'Sherman act.'

"Wherefore your petitioner prays that the defendants, the American Tobacco Company and the Craft Tobacco Company, Limited, and Augustus Craft, be cited to appear and answer this petitioh(er), and after all due and legal proceedings had, there be judgment in favor of your petitioner, and against the defendants, in the full sum of $168,926.85, and that the said sum should be trebled in accordance with the said act of Congress, and the said treble damages should be allowed your petitioner as against the said defendants, and each of them; and petitioner prays for reasonable attorney's fees, and for costs, and for such further and general relief as the court may deem just and equitable."

The defendants excepted to the supplemental and amended petition on the following ground:

"That said petition fails to disclose a cause or right of action."

The court sustained the exception, "and decreed that the said exceptions be maintained, and that the plaintiff's suit be, and the same is hereby, dismissed at its costs."

The plaintiff brought the case to this court by writ of error. The judgment sustaining the exception and dismissing the petition (with 20 specifications) is assigned as error.

Edwin T. Merrick and Ralph J. Schwarz, for plaintiff in error.

George Denegre, Joseph Paxton Blair, and Victor Leovy (Junius Parker, of counsel), for defendant in error American Tobacco Co.

William S. Parkerson and Bernard Bruenn, for defendants in error Craft Tobacco Co. and Augustus Craft.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). This is an action for threefold damages under section 7, Act July 2, 1890 (chapter 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]). An exception of no cause of action was sustained by the court below. The sole question therefore is whether, on the facts alleged in the petition and admitted by the exception, this action can be maintained. The question can only be decided by an examination of the relevant parts of the act (which we copy in the margin[1]) in connection with the averments of the petition.

[1] An act to protect trade and commerce against unlawful restraints and monopolies.

Sec. 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

Sec. 7. Any person who shall be injured in his business or property by any

The first and second sections of the statute describe and condemn certain acts which restrain interstate or foreign commerce, and the seventh section provides that one who is injured in his business or property by another by reason of anything forbidden by the statute may sue for threefold damages. To repeat, the first and second sections condemn certain acts, and punish them as misdemeanors. The seventh section is to the effect that those who do the forbidden things, commit the misdemeanors, may be sued in a civil action for threefold damages by one who is injured in his business or property. It follows therefore that the petition should charge, and that is all that is required: (1) That the defendants have done one or more of the forbidden things; (2) that by such action of the defendants, the plaintiff has been injured in its business or property; and (3) the amount or value of such injury. If the petition contains these essential averments, it is not subject to an exception of no cause of action, although it may contain surplusage and may specify some items of damages which may not be recoverable.

But, before we examine the petition, we must look closer at the statute on which it is framed. Here is the description it gives of the condemned misdemeanors:

"Sec. 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor. * * *"

"Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor. * * *"

Presently we must examine the petition to see whether it charges that the defendants did one or more of these forbidden things. If it does so charge, it will remain to be determined whether there are averments showing that the plaintiff comes within the seventh section, to wit:

"Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor, * * * and shall recover threefold the damages by him sustained. * * *"

This more elaborate statement of the statute makes it plain that the petition need only aver, and state facts to show, that the defendants have committed one or more of the offenses condemned by the first and second sections, that the plaintiff is a person injured within the meaning of the seventh section, and the amount of damages it sus-

other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee.

Sec. 8. That the word "person," or "persons," wherever used in this act shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the territories, the laws of any state, or the laws of any foreign country.

tained by such injury. Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, was an action like this, brought under section 7 of the act. A demurrer was sustained to the declaration by the lower court, and in reversing the judgment Mr. Chief Justice Fuller, speaking for the court, had occasion to summarize the averments in holding them sufficient:

"We have given the declaration in full in the margin, and it appears therefrom: That it is charged that defendants formed a combination to directly restrain plaintiffs' trade; that the trade to be restrained was interstate; that certain means to attain such restraint were contrived to be used and employed to that end; that those means were so used and employed by defendants; and that thereby they injured plaintiffs' property and business."

We turn now to the petition to see if it has the necessary allegations to sustain the action, looking at it with the statute before us, aided by the summary of the declaration held to be good by the Supreme Court in Loewe v. Lawlor, supra.

We find an elaborate charge of a combination and conspiracy in restraint of interstate trade or commerce by the three defendants. Other persons, who are not sued, are named as parties to the conspiracy. Such other persons are corporations owned in part and controlled by one or more of the alleged conspirators who are sued. At great length, and with minute details, the petition alleges and describes this combination or conspiracy in restraint of interstate trade or commerce, showing that it is such as is condemned by the first section of the act. With equal fullness, there are allegations of an attempt by the defendants, with other conspirators, to monopolize the trade or commerce in tobacco among the several states, such an attempt and conspiracy as is condemned by the second section of the act. It is then alleged that the plaintiff was engaged in interstate trade or business, such as that engaged in by the defendant companies, and that the described acts of the defendants were done for the purpose of obtaining a monopoly and destroying the business of the plaintiff. It is further alleged that by such conspiracies and combinations of the defendants, and by their efforts to obtain a monopoly, the business of the plaintiff was injured greatly, and that the plaintiff was damaged to the extent of $168,926.85. The full petition is given in the statement of the case. It would serve no useful purpose now to condense and restate the facts alleged. If the averments are true—and the exception of no cause of action admits them to be true—the defendants are guilty of the misdemeanors charged in the first and second sections of the act, and the plaintiff has been injured in its business or property within the meaning of the seventh section.

We are of opinion therefore that the court erred in sustaining the exception of no cause of action.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.