MAINE SHORE LINE RAILROAD COMPANY

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland.   Opinion February 20, 1899.

*Corporation.   Charter.   Action.   Limitations.   R. S., c. 46, § 24.   Spec. Laws, 1887, c. 21.*

In an action brought by the plaintiff company against the defendant company to recover damages for the violation of an alleged contract, the defendant filed a motion to dismiss the suit upon the ground that the plaintiff's charter had expired and that the three years subsequent thereto, within which, under R. S., c. 46, § 24, the corporation could prosecute and defend suits, close its business and distribute its capital, had also expired, *held;* that the plaintiff corporation has its existence only by virtue of its charter and that its continued life for three years more under the general statute has expired.   The plaintiff having no corporate existence can neither recover judgment nor suffer one against itself; and the action was rightfully dismissed.

The court considers that the plaintiff corporation has expired from the following facts: The Maine Shore Line Railroad Company, by its conveyance of October 22, 1888, to the Maine Central Railroad Company, authorized by the act of 1887, chapter 21, carved out of the charter of the Maine Shore Line Railroad Company that portion of its road then already constructed from Brewer to Hancock Point, and made the same subject to the charter of the Maine Central, so that thereafter the Shore Line charter remained just as if the railroad conveyed had never been included in it. Its western terminus became Hancock instead of Brewer.

By the terms of the remaining charter of the Maine Shore Line Railroad Company, its powers and franchises were to lapse on January 28, 1895, unless some part of its line should have been constructed on that date. No part of the line had been constructed on that date, and its powers then became extinct. Its charter ceased to exist; it had expired by its own limitation; it was dead, except so far as section 24 of chapter 46 of the Revised Statutes continued its existence for three years, "to prosecute and defend suits," to settle and close its concerns, to dispose of its property and to divide its capital.

ON EXCEPTIONS AND REPORT.

This was an action at law brought by the Maine Shore Line Railroad Company against the Maine Central Railroad Company to recover damages in the sum of $300,000 for violation of an alleged contract, relating to the construction of the Maine Shore Line Railroad from a point in connection with the Maine Central Railroad in the town of Hancock to the water front in the town of Eastport, now the city of Eastport. At the January term, 1898, at which the action was assigned for trial, the plaintiff moved to be allowed to make two amendments to the declaration in its writ; the first changing the date of the alleged contract and striking out the allegation that the contract was in writing, and the second adding a new and different claim or specification of damage. The first of these amendments was allowed by the presiding justice, and the second disallowed. Exceptions were thereupon filed by the defendant to the allowance of the first amendment, and by the plaintiff to the disallowance of the second amendment. The two bills of exceptions were duly allowed.

At the following April term of the court, the defendant filed a motion to dismiss the suit upon the ground that by the terms of the acts constituting the charter of the Maine Shore Line Railroad Company, said charter expired and became void on the 28th day

of January, 1895, and that the three years subsequent thereto, within which, under the general statutes of Maine, (R. S., ch. 46, § 24,) the corporation could prosecute and defend suits, close its business and distribute its capital, had also expired on the 28th day of January, 1898; and that therefore thereafter the plaintiff corporation had no right or power to prosecute or maintain this suit, and that no judgment could be lawfully rendered for or against it.    This motion, by agreement of parties, was reported by the presiding justice to this court, to be heard with the exceptions.

*Clarence Hale, C. A. Hight and A. F. Belcher*, for plaintiff.

Section 24 of c. 46, R. S., giving a three years limitation to corporations whose charters are terminated does not apply to corporations which have begun suits within said three years.    Such corporations have a right to prosecute the suits which they have begun within the three years.

The intention of the legislature in this statute seems to have been to provide a time after a charter has been terminated for the corporation to settle and close its concerns, and begin its judicial proceedings.    It seems clear that, with all the complications arising in the winding up of a corporation, and with all the uncertainty of time required for the ending of suits, that a legislature would not say that a corporation that had conscientiously entered into the matter of closing its accounts, and winding up its affairs, and completing its suits, should have those suits cut off in mid air and thus lose the whole benefit of its efforts in bringing its affairs to a close. A more natural interpretation of the statute is that it intends the three years for the instituting of suits, and that, if these suits are begun, the legislature does not intend that they shall be abated and terminated by this statute.    In *Hunt* v. *Columbian Ins. Co.*, 55 Maine, p. 290, the court held that a judgment of another state decreeing dissolution and appointing receivers of a corporation, will not prevent an action commenced against such corporation in this state prior to such dissolution from proceeding to judgment, unless it can be shown that the corporation is utterly extinguished.    The principle involved in this suit is precisely like that in the case at bar.    If a suit will not be prevented from proceeding to judgment

against a corporation, which suit had been begun properly, clearly the suit of a corporation which had been begun within the proper time, namely, within the three years, should not be prevented from going to judgment by this provision. Certain courts in other states have held in reference to certain statutes somewhat similar to this, that the three years was the whole time given for the winding up of the affairs of the corporation; but we think that the decision of these courts have been based upon a different state of facts than those arising in this case. There are many reasons also why such rule may apply to private corporations, and cannot apply to public corporations organized by statute.

*J. W. Symonds, D. W. Snow and C. S. Cook; and J. H. and J. H. Drummond, Jr.*, for defendant.

After January 28th, 1895, there was no right remaining to the defendant corporation under its charter. The corporation was as one dead, except so far as its corporate existence, for the purpose of maintaining and defending suits and settling its business, was extended for three years by force of section 24, ch. 46, of the Revised Statutes. At the expiration of these three years, to wit, after January 28, 1898, its corporate existence, rights and powers were absolutely at an end. The authorities upon this point are clear. The rule as stated in 5 Thomp. Cor. § 6651 is as follows:

"If the charter or governing statute of the corporation fixes a definite period of time at which its corporate life shall expire, when that period is reached, the corporation is ipso facto dissolved, without any direct action to that end, either on the part of the state or of its members; and no powers created by the charter or governing statute can thereafter be exercised, except such as are continued, by force of the statute law, for the purpose of winding up its affairs."

In the same volume, § 6722, it is further stated as follows:

"By the principles of the common law, in the absence of any saving statute, the dissolution of a corporation has the effect of abating all actions pending against a corporation at the date when the dissolution takes effect, as hereafter explained. . . . .
. . . . The effect of this principle was such, that where, in an

action by a corporation, the plaintiff introduced in evidence its articles of incorporation, although no issue as to its corporate existence had been raised, and these articles showed that its charter had expired during the pendency of the action,—it was held that the court could not render a judgment in favor of the corporation upon the verdict which had been returned by the jury."

In the same line are various decisions in this state. *Reed v. Frankfort Bank,* 23 Maine, 318; *Whitman* v. *Cox,* 26 Maine, 340; *Merrill* v. *Suffolk Bank,* 31 Maine, 57; *Rankin* v. *Sherwood,* 33 Maine, 510.

The case of *Thornton* v. *Marginal Freight Railway Company,* 123 Mass. 32, is precisely in point. The general statutes of Massachusetts contained a provision similar to that contained in section 24 of ch. 46 of the Revised Statutes of Maine. In the former it was provided that for three years after the termination of the charter of a corporation by repeal or otherwise, its corporate existence should continue for the purpose of prosecuting and defending suits and settling the business of the corporation, and it was held that a judgment recovered against the company, subsequent to the expiration of said three years, was wholly void "as if it had been rendered against a dead person."

See also: *E. Remington & Sons* v. *Samana Bay Co.,* 140 Mass. 494; *Richards* v. *Attleborough National Bank,* 148 Mass. 187.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, SAVAGE, JJ.

HASKELL, J. Did the charter of plaintiff corporation expire by limitation after this action had been commenced, so as to abate the same?

The Maine Shore Line Railroad Company was chartered by the legislature of Maine, Act of 1881, c. 91, and authorized to construct a railroad from Calais to Ellsworth with a branch to Eastport, and to consolidate with any connecting railroad, and, if upon completion of the railroad before named, there had not been constructed a standard gauge railroad from Ellsworth to Bangor, it might construct one. The act also provided that the charter should

become void unless the road from Calais to Ellsworth shall have been completed for travel February 1, 1886, except as to completed portions of the road.

By act of 1883, c. 165, the charter was continued in force for the completion of its railroad until February 1, 1887, and it was also authorized to construct and complete a railroad from Ellsworth to Brewer by February 1, 1885. Under this act it did construct its railroad from Brewer, via Ellsworth, to Hancock Point, and on May 1, 1883, leased the same to the Maine Central Railroad Company for nine hundred and ninety-nine years.

By act of 1887, c. 21, approved January 28th, the Maine Shore Line Railroad Company was authorized to "sell, transfer and convey" to the Maine Central Railroad Company its roads from Brewer to Hancock Point, together with its wharves and other terminal facilities in Hancock, and the Maine Central Railroad Company was invested "with the power to own, maintain and operate said railroad, as fully and completely as if the same were embraced in and covered by the charter of said Maine Central Railroad Company." The act reserved to the Shore Line Company the right to connect its road from the east, with the road to be conveyed, at Hancock, and extended the time for constructing its road easterly four years, or to January 28, 1891. Under authority of this act the conveyance named therein was made October 22, 1888, and the Maine Central Railroad Company, already having possession of the property, has operated it hitherto.

It should be noticed that the Shore Line Company was not authorized unconditionally by its original charter to construct a railroad from Brewer to Ellsworth. Authority for that purpose was given by subsequent act of 1883, and authority to convey it, together with a few miles east of Ellsworth, was given by act of 1887. The power to construct and to dispose of were both added to the original charter. By the exercise of the latter power, that road was carved out of the Shore Line charter and made subject to the charter of the Maine Central; so that thereafter the Shore Line charter remained just as if the railroad conveyed had never been included in it. Its western terminus became Hancock instead

of Brewer.    This construction is apparent from the fact that the act reserved to the Shore Line Company the right of connection, with the road conveyed, at Hancock for its line easterly thereof, and that the time for its construction was enlarged four years, to January 28, 1891.    The very language of the act, 1891, c. 11, is decisive of the construction here given.    It is:—"The time for the location and construction of the Maine Shore Line Railroad, extending easterly from the town of Hancock, is hereby extended four years from the date of the approval of this act," January 28, 1891.    That was the only corporate power continued in the company, viz., to construct its road easterly from Hancock. ·Of all other corporate powers it had been shorn.

By the terms of the remaining charter of the Shore Line, its powers and franchises were to lapse on January 28, 1895, unless some part of its line shall have been constructed on that date.    No part of the line had been constructed on that date, and its powers then became extinct.    Its charter ceased to exist.    It had expired by its own limitation.    It was dead, except so far as sec. 24, c. 46, of R. S., continued its existence for three years, "to prosecute and defend suits;" to settle and close its concerns; to dispose of its property; and to divide its capital.

This suit was commenced within the three years, and, upon the expiration thereof, the defendant .moved to dismiss the action, because the same abated for the want of a plaintiff.    It is stoutly contended that the plaintiff's corporate existence continues, after the expiration of the three years and until judgment shall be recovered.    The statute does not say that it shall.    Its only corporate existence is by virtue of that statute, and that continued its life three years and no more.    The legislature has not seen fit to intervene, and the court cannot vivify that which the legislature has allowed to expire.    The plaintiff has no corporate existence and can neither recover judgment nor suffer one against itself.    Its· action has abated, and there is no one who can revive it.    It must be dismissed from the docket.    The authorities cited at the bar sustain this result.

*Motion sustained.    Action dismissed.*