### STROUT v. UNITED SHOE MACHINERY CO. et al.

(District Court, D. Massachusetts. March 30, 1912.)

No. 203 (C. C. 855).

1. Monopolies (§ 28*)—Actions for Damages by Combinations—Pleadings—Sufficiency.

A declaration, which alleges that defendant corporation was formed to suppress competition in shoe machinery, that, in pursuance of the plan, it and its officers, codefendants, acted in combination and conspiracy in restraint of plaintiff's trade, that the trade to be restrained was interstate, that enumerated things were done by the corporation and its officers to attain such restraint of plaintiff's trade, that thereby competition was destroyed and the monopoly of the corporation sustained, and that plaintiff's property and business were injured thereby, states a cause of action under Sherman Anti-Trust Act, Act Cong. July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), authorizing any person injured in his business or property by any person or corporation, by reason of anything forbidden in the act, to sue therefor in the federal Circuit Court in the district in which defendant resides or is found.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

2. Pleading (§ 17*)—Jurisdiction—Federal Courts—Pleadings.

Where the question relates to the jurisdiction of federal courts under a federal statute, the averments of the pleadings purporting to give jurisdiction must be positive, and argumentative inferences are insufficient.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 38, 41, 350; Dec. Dig. § 17.*]

3. Monopolies (§ 28*)—Civil Actions—Statutes.

The remedy given by the Sherman Anti-Trust Act (Act Cong. July 2, 1890, c. 647, § 7, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]), authorizing an action for threefold damages, sustained by any person injured in consequence of any act forbidden or declared to be unlawful by the act, is a civil remedy for private injury, compensatory in its purpose and effect, and the threefold damages recoverable are exemplary damages.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. COURTS (§ 264\*)—RIGHT TO SUE—JURISDICTION.**

A mere chancery receiver, having no title to the assets or to the claim sued on, cannot maintain an action in the federal courts in a jurisdiction other than that in which he was appointed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 801; Dec. Dig. § 264.\*

Actions by or against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

**5. CORPORATIONS (§ 560\*)—RIGHT TO SUE—JURISDICTION.**

A receiver of a corporation who is a successor in title of the corporation may sue in a foreign jurisdiction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. § 560.\*]

**6. CORPORATIONS (§ 560\*)—TRUSTEES ON DISSOLUTION—POWERS.**

A trustee of a Maine corporation, appointed in proceedings for the dissolution of the corporation under Rev. St. Me. c. 47, §§ 77–81, 89, providing for the dissolution of corporations and the appointment of trustees, is vested by operation of law with the title of the dissolved corporation, and he has capacity to sue in a foreign jurisdiction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. § 560.\*]

**7. CORPORATIONS (§ 560\*)—DISSOLUTION—TRUSTEES—POWER TO SUE.**

The power of a trustee of a Maine corporation, appointed under Rev. St. Me. c. 47, §§ 77–81, 89, in proceedings for the dissolution of the corporation, is not affected by the provision giving dissolved corporations existence for three years to prosecute and defend suits, and he may prosecute suits after the expiration of the three years.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. § 560.\*]

At Law. Action by Charles A. Strout, trustee of the Goddu Sons Metal Fastening Company, against the United Shoe Machinery Company and others. Motion to dismiss denied, and plea in abatement overruled.

Whipple, Sears & Ogden and Dunbar & Rackemann, for plaintiff.
Coolidge & Hight, W. H. Coolidge, and C. A. Hight, specially, for defendants.

HALE, District Judge. This case now comes before the court upon the United Shoe Machinery Company's motion to dismiss, because it appears upon the face of the record that the court has no jurisdiction; and upon the plea in abatement of all the defendants, raising the contention that the plaintiff is without capacity to sue in this jurisdiction.

[1] 1. In the motion to dismiss, the United Shoe Machinery Company urges that the court has no jurisdiction of the case, for the reason, appearing upon the face of the record, that the plaintiff is a citizen of the state of Maine, and the United Shoe Machinery Company, defendant, is a corporation organized and existing under the laws of the state of New Jersey; and neither the plaintiff nor defendant is a citizen of the state of Massachusetts.

The writ shows that the plaintiff is "Charles A. Strout, as he is the duly appointed trustee of the Goddu Sons Metal Fastening Company,

---

and a citizen of the state of Maine." The defendants are described in the writ as follows:

"United Shoe Machinery Company, a corporation duly organized under the laws of the state of New Jersey, and a citizen of the state of New Jersey, having an office and its principal place of business in Boston, in the commonwealth of Massachusetts, and found in the district of Massachusetts.

"Sidney W. Winslow, of Orleans in the county of Barnstable, commonwealth of Massachusetts.

"George W. Brown and Edward P. Hurd, both of Newton in the county of Middlesex, commonwealth of Massachusetts.

"Said Winslow, Brown, and Hurd being severally citizens of the commonwealth of Massachusetts, in the district of Massachusetts."

The amount of damages claimed is $2,000,000.

The court, then, has before it a citizen of Maine suing a citizen of New Jersey in a civil action, brought in the Circuit Court of the United States for the District of Massachusetts. The obvious contention is raised by defendant that in any ordinary civil action a citizen of New Jersey cannot be called to answer a suit by a citizen of the state of Maine in the United States Court for the District of Massachusetts. The plaintiff does not controvert this suggestion, but says that the action is brought under the Sherman Anti-Trust Statute, the Act of July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), and that the declaration clearly presents a cause of action under section 7 of that act, which provides as follows:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or *is found*, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

It will be seen that, under this section, without respect to the amount in controversy, such action may be brought in the district in which the defendant resides or *is found*. And it is not denied that the defendants in the case at bar are found in the district of Massachusetts. It is contended, however, that the declaration does not clearly show that the action is brought under the Sherman Anti-Trust Act; that it does not sufficiently appear by the writ and declaration that the case is confined to an action under this statute; that therefore the jurisdiction of the court does not affirmatively appear; and that, where threefold damages are sought by virtue of the statute, the declaration must state a case clearly and unequivocally authorized by the law. The substance of the declaration is stated sufficiently for the purposes of this case in the summary given by the defendant, as follows:

"That the Goddu Sons Metal Fastening Company was organized under the laws of the state of Maine as a corporation in 1897, for the purpose of manufacturing and dealing in shoe machinery. That it acquired certain patents pertaining to shoe machinery, and made preparation to place on the market throughout the United States machines constructed under its patents. That the defendant the United Shoe Machinery Company was organized on February 7, 1899, under the laws of the state of New Jersey. That since its organization it has been engaged in the manufacture of, and dealing in, shoe

machinery throughout the United States and in foreign countries. That upon the organization of the United Shoe Machinery Company, the defendant Winslow became, and ever since has continued to be, its president, a director, and member of the executive committee. That the defendant Brown became its treasurer, a director, and member of the executive committee, and the defendant Hurd became assistant treasurer, a director, and member of the executive committee. That these individual defendants down to the present time have continued to exercise the management and control of the business affairs of the corporation.

"That the United Shoe Machinery Company was formed with the idea of suppressing and eliminating competition. That shortly after the formation of the company, the individual defendants, or some of them, entered into negotiations with certain stockholders of the Goddu Sons Metal Fastening Company for the purchase of their stock by the United Shoe Machinery Company. That as a result of the negotiations the United Shoe Machinery Company purchased a majority of the stock of the Goddu Company, thereby acquiring control and management of the corporation. That the United Shoe Machinery Company caused to be elected as officers of the Goddu Company its own president, the defendant Winslow, as president of the Goddu Company; its own treasurer, the defendant Brown, as treasurer of the Goddu Company; and a part of its own directors, including the defendant Hurd, as the entire board of directors of the Goddu Company. That the persons so elected have continued to be the officers of the Goddu Company. That in pursuance of the plan and purpose to suppress and eliminate competition, and to support and protect the monopoly of the United Shoe Machinery Company, the United Shoe Machinery Company and the individual defendants, in combination and conspiracy in restraint of trade and commerce among the several states and with foreign nations, have controlled the management of the Goddu Company, not for the purpose of carrying on and developing the business of said company, but for the purpose of preventing the said company from doing business, thereby destroying the competition of said company. That they have declined to cause the company to make any use of its patents, or permit it to do business, and have continuously prevented it from engaging in business so that the assets of the company have remained idle and become wasted, and the patents and patent rights are about to expire and have become practically worthless. That by these means the plan of the United Shoe Machinery Company and the individual defendants has been effected and accomplished, in that the competition of the Goddu Company has been destroyed and the monopoly of the United Shoe Machinery Company sustained. That thereby the Goddu Company has been greatly injured in its business and property, in that its patents, patent rights, and other assets have been rendered worthless. Wherefore the plaintiff is entitled to recover from the defendant threefold the damages by him sustained, and also the costs of this suit, including a reasonable attorney's fee."

It is contended that this is not a declaration unmistakably under the Sherman Act; that this act is not referred to; and the presumption is that the cause is without the jurisdiction of the federal courts, unless the contrary affirmatively appears; but that the case must be treated as one based upon diversity of citizenship; and that therefore it must be dismissed as to the United Shoe Machinery Company. Upon examination of the declaration, it is found that there is not a word in its expressly stating that the action is brought under the Sherman Anti-Trust Act. There is no mention of the act, or reference to it, in distinct terms. It is not even stated that the defendant became liable by force of the act. But it does appear from the declaration that the defendant company was formed with the plan of suppressing competition, and of maintaining a monopoly of the shoe machinery business; that in pursuance of such plan, the defendant acted

in combination and conspiracy in restraint of plaintiff's trade; that the trade to be restrained was interstate; that certain things were done by the defendants to attain such restraint of the plaintiff's trade; and that thereby the competition of the plaintiff company has been destroyed, the monopoly of the defendant company sustained, and the plaintiff's property and business injured. I see no need of restating the whole of the declaration. A fair reading of it leaves no doubt that the action was brought under section 7 of the Sherman Act. No question can be left in the mind of the court that the pleader intended to state a case under that section. This is so clear that I cannot think it necessary to label the declaration as one brought under the provisions of the Sherman Act. The allegations make it plain that the action is clearly founded upon that act, and upon that alone, and that no common-law remedy, or other remedy of any kind, is sought.

[2, 3] The doctrine of the federal courts is unquestionably that in matters of pleading inferences from equivocal and uncertain allegations cannot be followed, and that, where the question relates to jurisdiction, argumentative inferences are not sufficient to establish jurisdiction. The averments must be positive; and the court cannot retain jurisdiction over a doubtful record to say whether or not the intention was to bring the case under a specific act. The learned counsel for the defendants have called attention to the leading cases upon this subject. The court in this circuit has expressed itself clearly in Jenkins v. York Cliffs Improvement Company (C. C.) 110 Fed. 807. But the declaration in this case seems to me to be perfectly clear. The averments are such as to show unequivocally that the action is brought under section 7 of the Sherman Law, even though the plaintiff did not in terms mention that statute. This was not necessary so long as the allegations were such as to preclude the defendant from being misled, and to prevent the plaintiff from urging at any later stage in the case that he intended merely to state a common-law action. Section 7 of the Sherman Law is so clear and plain in its provisions that its meaning cannot be uncertain. It is not in its nature and substance a penal action; its vindication does not rest with the state; it has been held repeatedly to be a civil remedy for private injury, compensatory in its purpose and effect. It provides for the recovery of threefold damages sustained by the plaintiff, which are held to be exemplary damages. People's Tobacco Co. v. American Tobacco Co., 170 Fed. 396, 95 C. C. A. 566; Atlanta v. Chattanooga Foundry & Pipe Co. (C. C.) 101 Fed. 900; Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815.

The motion to dismiss must be denied.

[4-6] 2. In the plea in abatement the defendants raise the contention that the plaintiff is without capacity to sue in the federal court in the district of Massachusetts. The facts set forth in the plea are briefly stated by the learned counsel for the defendant in his brief. They are as follows:

"The Goddu Sons Metal Fastening Company was a corporation organized under the laws of the state of Maine in the year 1897. On the 7th day of

January, 1905, a suit in equity was brought in the Supreme Judicial Court for the State of Maine, county of Cumberland, by the treasurer of the company, pursuant to a vote of the stockholders, for the dissolution of said company, under authority of the statutes of the state of Maine, providing for the voluntary dissolution of corporations.

"On February 17, 1905, a decree was entered in the equity suit dissolving said corporation, the decree providing that 'the defendant corporation, known as the Goddu Sons Metal Fastening Company be, and the same hereby is, dissolved as and from the date of this decree,' and by the same decree Robert T. Whitehouse, of Portland, was appointed trustee, to collect by suit or otherwise all outstanding debts or claims, due the corporation, and to take possession of all effects, property, and assets of every name and nature belonging to the corporation, and to do certain other acts in connection with the liquidation of the company's affairs. As set forth in the decree, Mr. Whitehouse qualified as trustee by giving the bond required.

"On July 19, 1911, Mr. Whitehouse filed a petition to be permitted to resign as trustee, and on July 19, 1911, he was permitted to resign, and a further decree was entered appointing Charles A. Strout, the plaintiff, as successor trustee.

"The decree appointing Charles A. Strout was practically the same as the one appointing Mr. Whitehouse, except that there was added to the decree provisions that 'all questions not hereby disposed of are reserved for further adjudication.' And 'it is further ordered that this decree is subject to such further orders as the court may from time to time see fit, and that said trustee or any persons in interest have liberty to apply to this court at any time for such modification of this order as they may be advised.' "

The appointment of the plaintiff as trustee was made under section 81 of chapter 47 of the Revised Statutes of Maine. It will be necessary to consider the following sections of that chapter, relating to the dissolution of corporations:

"Sec. 77. Corporations, whose charters expire or are otherwise terminated, have a corporate existence for three years thereafter; to prosecute and defend suits; to settle and close their concerns; to dispose of their property; and to divide their capitals.

"Sec. 78. When the charter of a corporation expires or is terminated, a creditor or stockholder may apply to the Supreme Judicial Court, which may appoint one or more trustees to take charge of its estate and effects, with power to collect its debts, and prosecute and defend suits at law; and to sell and convey its real estate; and if sold at auction, the same notice shall be given as in the sale of lands of corporations on execution. The court has jurisdiction in equity of all proceedings therein and may make such orders and decrees and issue such injunctions as are necessary.

"Sec. 79. The debts of the corporation shall be paid in full by such trustees when the funds are sufficient; when not, ratably to those creditors, who prove their debts, as the law provides, or as the court directs. Any balance remaining shall be distributed among the stockholders or their legal representatives in proportion to their interests.

"Sec. 80. Except where otherwise provided by statute, whenever at any meeting of its stockholders, legally called therefor, such stockholders vote to dissolve such corporation, a bill in equity against the same for dissolution thereof may be filed by any officer, stockholder or creditor in the Supreme Judicial Court, in the county in which it has an established place of business, or in which it held its last stockholders' meeting; upon said bill, such notice shall be given as may be ordered by any justice of said court, in term time or vacation, and upon proof thereof, such proceedings may be had according to the usual course of suits in equity, that said corporation shall be dissolved and terminated. Upon proof that there are no existing liabilities against said corporation, and no existing assets thereof, requiring distribution among the stockholders, said court may dissolve said corporation without the appointment of trustees or receivers.

"Sec. 81. Said court has jurisdiction in said cause to appoint receivers, is-

sue injunctions, and pass interlocutory decrees and orders, according to the usual course of proceedings in equity; and shall, moreover, upon dissolving said corporation, or upon terminating its charter, appoint one or more trustees, who shall have all the powers conferred upon similar trustees by sections seventy-seven, seventy-eight, seventy-nine and eighty-nine, or by any other law of the state, with such special powers as may be given them by said court. But, notwithstanding the appointment of such trustees, said court may superintend the collection and distribution of the assets of said corporation, and may retain said bill for that purpose."

Section 89 refers to trustees and receivers. It provides that they may bring suit within two years to compel any one who has subscribed for stock in the corporation they represent to pay for the same.

(a) The first contention raised by the plea in abatement is that the trustee in this suit has not sufficient title to warrant him in bringing suit in this jurisdiction; but that he is the ordinary equity receiver without title. The defendants urge that, although called trustee in the decree of the court appointing him, the plaintiff is really nothing more than a chancery receiver without title, coming within that class of receivers which lacks any extraterritorial power of official action.

The law must be regarded as settled that the mere chancery receiver, having no title to the assets or to the claim sued upon, cannot maintain an action in the federal courts, in a jurisdiction other than that in which he was appointed. Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380. In Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337, the Supreme Court passed upon the rights of officials of a different character who were allowed to bring suits outside of the jurisdiction of their appointment. In this circuit, in Hale v. Hardon (C. C.) 89 Fed. 283, Judge Putnam has designated the different classes of receivers: First, those who are true successors in title, as in Relfe v. Rundle. Second, those who have received underlying support from the corporation itself, by voluntary assignments or by force of titles acquired through involuntary proceedings in insolvency or otherwise, as in Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184, and Telegraph Co. v. Purdy, 162 U. S. 337, 16 Sup. Ct. 810, 40 L. Ed. 986. The third are so-called receivers, like the commissioner in Hazard v. Durant (C. C.) 19 Fed. 471, who are nothing more or less than masters in chancery, appointed, as the hand of the court, to complete the incidents of the litigation. The first class of receivers, namely, those who are true successors in title, as in Relfe v. Rundle, have the right to sue anywhere. In the third class, the receiver or trustee has simply the powers of a chancery receiver; he cannot maintain an action in foreign jurisdictions.

In the case at bar the defendants urge that the plaintiff comes under the third class of receivers in the order named by Judge Putnam; that he is a mere officer of the court, having no title to the property, and with no capacity to sue in this jurisdiction. Upon examination of the statutes, we find that section 78 of chapter 47 of the Revised Statutes of Maine specifically provides that the trustee has the power to prosecute and defend suits at law. Section 80 provides for the dissolution of the corporation, without the appointment of trustees

or receivers in cases where there are no assets. Section 81 gives the court jurisdiction to appoint trustees and receivers upon dissolving the corporation, or upon terminating its charter, and gives these trustees powers conferred upon similar trustees by sections 77, 78, 79, and 89, or by any other law of the state. The defendants contend that, after February 17, 1905, the date of the decree appointing the trustee to wind up the affairs of the Goddu Company, by virtue of the laws of the state of Maine, the property of that company became vested in the persons who were at the time shareholders, as tenants in common under section 95 of chapter 47 of the Revised Statutes of Maine, which provides:

"When a corporation is dissolved, its real and personal estate is vested in the persons who were at the time shareholders, as tenants in common according to their interests."

In the original statute, the Legislature undoubtedly intended to change the rule of the common law that, in the absence of statute, upon the dissolution of a corporation, its real estate reverted to the grantors and to their heirs, and its personal estate vested in the people. Titcomb v. Insurance Co., 79 Me. 316, 9 Atl. 732; 2 Kent's Com. (10th Ed.) 385. In the revision of the Maine Statutes of 1841 (chapter 76, § 28) the statute read:

"On the final dissolution of any corporation, all its real and personal estate, *not legally disposed of,* shall be vested in the individuals who may be stockholders, etc."

In the revision of 1857 (chapter 46, § 37) this section appears phrased in its present form. Sections 80 and 81 were enacted in 1877. They provide for the dissolution of a corporation and for administering its effects, leaving nothing whatever to vest in the shareholders. In Cobb v. Camden Savings Bank, 106 Me. 178, 76 Atl. 667, 20 Ann. Cas. 547, Cobb and Moore were appointed receivers and trustees of the Mt. Battie Manufacturing Company under sections 80 and 81 of chapter 47, of the Revised Statutes of Maine. In referring to the title of the receivers, Mr. Justice Savage, speaking for the court said:

"It should be remembered that the proceedings under which these receivers are acting are statutory in their origin and character. It is not a creditors' bill. It is not a proceeding at common law. It is not a supplementary proceeding to a suit. * * * In former days, in common-law proceedings, it was generally held that appointment of a receiver did not operate to convey to him the title to real estate; but in modern times the doctrine has grown up and appears to be well established that at least in statutory proceedings for the dissolution of a corporation, the decree of appointment, ipso facto, vests the title to the real estate in the receiver."

The defendants urge that the court in that case did not decide that the decree of appointment of trustee vests the title of the property in the trustee, because the point did not necessarily arise in the case, and that whatever the court said upon the subject was mere dictum. But I cannot take this view. The case was a writ of entry brought by the plaintiffs, as trustees and receivers of the Maine corporation, which had been dissolved under the same statutory provisions as those under which this plaintiff in the case at bar was appointed trustee.

The action was brought to recover land to which the plaintiffs claimed title in their capacity of trustees and receivers; and the plaintiffs were allowed to recover. It is unquestioned that a real action cannot be maintained without title; for the plaintiff must declare "on his own seisin," and must prove title. My attention is called to the fact that in the report of the Cobb Case it appears that, on the same day on which the decree of dissolution was entered, a conveyance was made by the corporation to the trustees; but in the opinion of the court in that case no effect was given to this deed. And it is evident that the title of the plaintiffs was held to rest entirely upon the statute authorizing their appointment. Cobb v. Camden Savings Bank is, I think, decisive of the case at bar. It is clear that, in construing the statutes relating to the dissolution of corporations, the Maine court distinctly held that a trustee appointed, as the plaintiff in this case was appointed, under section 81 of chapter 47 of the Revised Statutes of Maine, is vested by operation of law with title to the property of the dissolved corporation. In Avery v. Trust Co. (C. C.) 72 Fed. 700, in an exhaustive and convincing opinion, Judge Putnam has passed upon a case substantially similar to the case now before the court. In Am. National Bank v. National, etc. (C. C.) 70 Fed. 420, a statute similar to the Maine statute was before the Circuit Court; and it was held unnecessary that the statute say in terms that the title should vest in the trustee, so long as the intention of the Legislature was disclosed.

I am of the opinion that the trustee in the case at bar became vested by operation of law with the title of the dissolved corporation, and had the capacity to sue in this jurisdiction.

[7] (b) The defendant raises the further contention that, by the express provision of the laws of the state of Maine, the plaintiff's power to sue was limited to three years from the date of dissolution of the corporation; and that this period has long since expired. The defendants refer to section 77 of chapter 47, Revised Statutes of Maine, which gives the dissolved corporation existence for three years to prosecute and defend suits. They cite Maine Shore Line Railroad v. Maine Central Railroad, 92 Me. 476, 43 Atl. 113, decided in 1809, in which the court said:

"This suit was commenced within three years, and, upon the expiration thereof, the defendant moved to dismiss the action, because the same abated for the want of a plaintiff. It is stoutly contended that the plaintiff's corporate existence continues, after the expiration of the three years and until judgment shall be recovered. The statute does not say that it shall. Its only corporate existence is by virtue of that statute; and that continued its life three years, and no more. The Legislature has not seen fit to intervene, and the court cannot vivify that which the Legislature has allowed to expire. The plaintiff has no corporate existence, and can neither recover judgment nor suffer one against itself. Its action has abated, and there is no one who can revive it. It must be dismissed from the docket."

In that case no trustee had been appointed. It is urged by the plaintiff that one of the principal reasons which led to the statute authorizing the appointment of trustees was to meet exactly the situation arising in the Maine Shore Line Railroad Case; it being apparent that the period of three years is often inadequate for winding up

the affairs of a dissolved corporation. In Franklin Bank v. Cooper, 36 Me. 179, cited by the learned counsel for defendants, the decision of the court was founded upon a special statute; and the court's reasoning and result are not convincing in the case at bar. In this case I am persuaded, and I have already held, that the trustee became vested by operation of the statutes of Maine with the title to the property of the dissolved corporation. Upon the resignation of the trustee first appointed by the court, the successor trustee, became vested, by force of the statute, with the title to the remaining property of the dissolved corporation. It is true that the court cannot "vivify that which the Legislature has allowed to expire"; but in the case before me the Legislature has not allowed the title of the trustee to expire. By the statute under which the trustee was appointed, the Legislature has vested the title of the property in the trustee. If the powers of such trustee could not be continued longer than the corporate existence of the corporation, one of the main purposes of the statute would be defeated. The title of the property, once having vested in the trustee, was not affected by the statute limiting the corporation's right to sue to three years from the date of its dissolution. I think the trustee's right to sue still exists, and is properly exercised in the case at bar.

The conclusion of the court, then, is that the motion to dismiss for lack of jurisdiction is denied. The plea in abatement is overruled. Defendants may answer further.