**LEONIA AMUSEMENT CORP. et al.**

v.

**LOEW'S Inc., et al.**

United States District Court
S. D. New York.

Oct. 20, 1953.

Amended Opinion Dec. 29, 1953.

See, also, D.C., 13 F.R.D. 438.

749

Sperry, Weinberg & Ruskay, New York City, Joseph A. Ruskay and Joseph H. Muller, New York City, of counsel, for plaintiffs.

Dwight, Royall, Harris, Koegel & Caskey, O'Brien, Driscoll & Raftery, Phillips, Nizer, Benjamin & Krim, Schwartz & Frohlich, Austin C. Keough, Herbert B. Lazarus, R. W. Perkins, J. Robert Rubin, Adolph Schimel and J. Miller Walker, New York City, John F. Caskey, Saul Friedberg, Louis D. Frohlich, Edward C. Raftery, and E. Compton Timberlake, New York City, of counsel, for defendants.

RYAN, District Judge.

This suit came on to be heard on an order of Chief Judge Knox, entered with the consent of all, directing that a separate trial be had of "the defense under the statute of limitations."

Suit was filed on April 1, 1952 to recover threefold the damages alleged to have been sustained by plaintiffs by reason of unlawful acts of the defendants and the costs of suit, including a reasonable attorney's fee.[1]

1. Section 4 of the Clayton Act, 15 U.S.C.A. § 15.

Plaintiff, Leonia Amusement Corporation, a dissolved New York corporation was the lessee and operator of the Leonia Theatre, located in Leonia, New Jersey. The individual plaintiffs are the trustees in dissolution of this corporation.[2]

The complaint alleges that defendants engaged in a combination and conspiracy in violation of the antitrust laws to injure plaintiffs in their operation of the Leonia Theatre and that, pursuant to this conspiracy, defendants refused to license motion pictures distributed by them to Leonia Theatre on the run and with the clearance desired. As a result of these alleged unlawful acts, plaintiffs claim they were put out of business and forced to sell their lease of the Leonia Theatre on September 1, 1935. Plaintiffs allege no interest in the theatre since that date.

All the defendants have filed answers pleading the three-year statute of limitations of New York,[3] some of the defendants[4] have in addition pleaded the six-year statute of limitations of New York,[5] and the six-year statute of limitations of New Jersey[6] pursuant to the provisions of Section 13, New York Civil Practice Act.[7]

It is not disputed that plaintiffs' claims, wholly and finally, accrued on September 1, 1935, and defendants have conceded that the statute of limitations

---

2. The complaint does not purport to state a claim in favor of the individual plaintiffs other than as trustees in dissolution.

3. Section 49 of the New York Civil Practice Act provides:
   "The following actions must be commenced within three years after the cause of action has accrued:
   * * * * *
   "3. An action upon a statute for a penalty or forfeiture where the action is given to the person aggrieved or to that person and the people of the state, except where the statute imposing it prescribes a different limitation."

4. These defendants are Twentieth Century-Fox-Film Corporation, Loew's Incorporated, Warner Bros. Pictures, Inc., Warner Bros. Picture Distributing Corporation, Paramount Film Distributing Corporation, Paramount Pictures, Inc., Paramount Pictures Corporation, United Paramount Theatres, Inc., RKO Radio Pictures, Inc., RKO Pictures Corporation and RKO-Keith-Orpheum Theatres, Inc. At times, these defendants are referred to herein as the consenting defendants.

5. Section 48 of the New York Civil Practice Act provides:
   "The following actions must be commenced within six years after the cause of action has accrued:
   * * * * *
   "2. An action to recover upon a liability created by statute, except a penalty or forfeiture."

6. New Jersey Revised Statutes, 2:24–1 [now N.J.S. 2A:14–1, N.J.S.A.] provides:
   "Six years; certain enumerated actions. All actions in the nature of trespass quare clausum fregit, trespass, detinue, trover, actions of replevin for the taking away of goods and chattels, actions in the nature of debt, founded upon a lending or contract without a speciality or for arrears of rent due on a parol demise, actions of account, actions in the nature of actions upon the case * * * shall be commenced within six years next after the cause of any such action has accrued, and not thereafter. * * *"

7. Section 13 of the New York Civil Practice Act provides:
   "Limitation where cause of action arises outside of the state. Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose, for bringing an action upon the cause of action, except that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply. Where such cause of action, whether originally accrued in favor of a resident or non-resident, arose in a foreign country with which the United States or any of its allies was then or subsequently at war, or in territory then or subsequently occupied by the government of such foreign country, the period between the commencement of the war, or the occupation of such country, and the termination of hostilities with such country, or the termination of such occupation, is not a part of the time limited in this article for commencing the action, * * *."

was suspended while the suit of United States v. Paramount Pictures [8] was pending against them.

Plaintiffs contend that the Paramount suit was pending from July 20, 1938 until at least October 16, 1950; that the six-year statute of New York is applicable, and that this statute was suspended during all the time the Paramount suit was pending.[9]

All of the defendants urge that the suit is to recover a penalty within the meaning of Section 49(3) of the New York Civil Practice Act. In the event that the suit be held to be one brought to recover upon a liability created by statute, within the meaning of Section 48(2) of the New York Civil Practice Act, and not one to recover a penalty or forfeiture, the consenting defendants alternatively urge that the Paramount suit was not pending against them within the meaning of Section 5 of the Clayton Act, Section 16, Title 15 U.S.C.A., during the period from the entry of the decree of November 20, 1940 to August 7, 1944, when the United States filed an application for modification of that decree.

This separate trial presents no factual issues [10] and but two major questions of law. I consider now the first of these:

*What statute of limitations is applicable to the claims pleaded in the complaint?*

■ It is settled that there is no federal statute of limitations governing actions under the antitrust laws for threefold the damages sustained [11] and that the statutes of limitations of the state in which the action is commenced are applicable.[12] The Rules of Decision Act [13] has been steadfastly applied in actions at law to statutes of limitations of the state in those cases where the federal act contains no limitation period.[14]

■ Plaintiffs seek to enforce a right created by federal statute; jurisdiction does not depend upon diversity of citizenship and Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is not applicable. Determination of the nature of the claims pleaded is a federal matter and is to be reached by application of federal law.[15] Having so decided

8. ·D.C.S.D.N.Y.1946, 66 F.Supp. 323; D.C. S.D.N.Y.1947, 70 F.Supp. 53; 1947, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; D.C.S.D.N.Y.1950, 85 F.Supp. 881; 1950, 339 U.S. 974, 70 S.Ct. 1032, 94 L.Ed. 1380; 1950, 340 U.S. 857, 71 S.Ct. 70, 95 L.Ed. 627.

9. Section 5 of the Clayton Act, 15 U.S.C.A. § 16.

10. The proceedings in the Paramount suit are found in the files of this court. Although, for the convenience of the court, various filed papers have been received in evidence, I have taken notice of all the proceedings had in that suit. Cf. National Fire Ins. Co. of Hartford v. Thompson, 1930, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881; Lockhart v. Johnson, 1901, 181 U.S. 516, 520, 21 S. Ct. 665, 45 L.Ed. 979; Criscuolo v. Atlas Imperial Diesel Engine Co., 9 Cir., 1936, 84 F.2d 273, 275.

11. Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Hoskins Coal and Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912, certiorari denied, 1952, 342 U.S. 947, 72 S.Ct. 555, 96

L.Ed. 704; Schiffman Bros. v. Texas Co., 7 Cir., 1952, 196 F.2d 695.

12. "We take it that in the absence of a controlling act of Congress federal courts of equity, in enforcing rights arising under statutes of the United States, will without reference to the Rules of Decision Act, adopt and apply local statutes of limitation which are applied to like causes of action by the state courts. Cf. Mason v. United States, 260 U.S. 545, 43 S.Ct. 200, 67 L.Ed. 396; Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313". Russell v. Todd, 1940, 309 U.S. 280, 293, 60 S.Ct. 527, 534, 84 L.Ed. 754.

13. 1 Stat. 73; 28 U.S.C.A. § 1652.

14. Campbell v. City of Haverhill, 1895, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280; Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S. Ct. 65, 51 L.Ed. 241; Pufahl v. Estate of Parks, 1936, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133; Russell v. Todd, supra; Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743.

15. In Momand v. Twentieth-Century Fox Film Corporation, D.C.Okl.1941, 37 F. ·

the nature of the claim, we are required to ascertain by local law the particular state statute of limitations which affects the enforcement of the claim. When doing this we are bound by the decisions of the state courts on the construction and interpretation to be given these state statutes.[16]

Of course, the varying state statutes will result in lack of uniformity of the limitation period; that this is so, absent an applicable federal statute of limitations, has long been recognized and accepted.[17] But uniform interpretation of a federal statute is a matter of federal concern; it can only be achieved by reserving that power of interpretation to the federal courts; it was not surrendered by the Rules of Decision Act.[18]

■ The problem, therefore, is twofold: (a) what in federal law is the essential nature of a claim arising under Section 4 of the Clayton Act as amended;[19] and (b) what New York statute of

limitations would the New York courts hold applicable to this type or class of claim. (In fact, this precise question could not come before the New York courts for decision, for a suit to recover threefold damages sustained by reason of a violation of the federal antitrust laws cannot be brought in a state court.)

In many private antitrust suits filed in district courts, within New York it has been held that the six-year statute of limitations [20] was applicable.[21] It is true that in two of these suits [22] the defendants did not question the applicability of the six-year statute as sufficient to bar the claims pleaded, but a reading of these decisions is indicative of a general acceptance by the court and bar that the six-year statute applied. Likewise, district courts in other states have held that the statute of limitations of the particular state covering penalties does not apply to an action under the antitrust laws.[23]

Supp. 649, at page 652, the court noted that:

"It is readily conceded that the definition given to the right of action by the Federal law is binding. Stated otherwise, the nature of the cause of action, created and granted by the Sherman Anti-Trust Act, is to be determined by the Federal decisions."

See also, Electric Theatre Co. v. Twentieth-Century Fox Corp., D.C.Mo., 113 F.Supp. 937 and Fulton v. Loew's Incorporated, D.C.Kan., 114 F.Supp. 676.

16. When examining state law to determine the applicable statute of limitation, federal courts are required to construe the state statutes as they would be construed by state courts. Dibble v. Bellingham Bay Land Co., 1896, 163 U.S. 63, 16 S.Ct. 939, 41 L.Ed. 72; Bauserman v. Blunt, 1893, 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316; Pufahl v. Estate of Parks, supra.

17. Great Western Telegraph Company v. Purdy, 1896, 162 U.S. 329, at page 339, 16 S.Ct. 810, at page 814, 40 L.Ed. 986.

18. Williamson v. Columbia Gas and Electric Corp., D.C., 27 F.Supp. 198, affirmed, 3 Cir., 110 F.2d 15, certiorari denied 310 U.S. 639, 60 S.Ct. 1087, 84 L.Ed. 1407.

19. 38 Stat. 731; 15 U.S.C.A. § 15.

20. Section 48(2), N.Y.C.P.A.

21. Seaboard Terminals Corporation v. Standard Oil Co., D.C.S.D.N.Y.1938, 24 F.Supp. 1018, affirmed on other points, 2 Cir., 1939, 104 F.2d 659; Pastor v. American Telephone & Telegraph Co., D.C.S.D.N.Y.1940, 76 F.Supp. 781; Alden-Rochelle, Inc. v. American Soc. of C., A. & Publishers, D.C.S.D.N.Y.1942, 3 F. R.D. 157; Dipson Theatres v. Buffalo Theatres, D.C.W.D.N.Y.1948, 8 F.R.D. 86; Bascom Launder Corporation v. Farny, D.C.S.D.N.Y.1950, 10 F.R.D. 421; and Winkler-Koch Engineering Co. v. Universal Oil Prod. Co., D.C.S.D.N.Y. 1951, 100 F.Supp. 15.

22. Pastor v. American Telephone & Telegraph Co. and Alden-Rochelle, Inc. v. American Soc. of C., A. & Publishers, supra.

23. (a) California
Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 170 F.2d 569;
Levy v. Paramount Pictures, D.C. N.D.Cal.1952, 104 F.Supp. 787;
United West Coast Theatres, Corp. v. South Side Theatres, D.C.S.D.Cal.1949, 86 F.Supp. 109;
(b) Colorado
Wolf Sales Co. v. Rudolph Wurlitzer Co., D.C.D.Colo.1952, 105 F.Supp. 506;

But defendants urge that to the extent that these decisions cite and rely upon the Chattanooga case,[24] such reliance is misplaced; and to the extent that they refer to private suits to recover three-fold damages for antitrust violations as not being for a "penalty" under federal law, they are in conflict with conclusions reached by other federal courts,[25] and contrary to the legislative history of the antitrust laws.

I accept the defendants' historical recitals of the Chattanooga decisions.[26] I read Chattanooga as saying that a suit

---

(c) New Jersey

Shelton Electric Co. v. Victor Talking Mach. Co., D.C.D.N.J. 1922, 277 F. 433;

(d) Ohio

Reid v. Doubleday & Co., D.C.N. D.Ohio 1952, 109 F.Supp. 354;

(e) Oklahoma

Momand v. Universal Film Exchange, D.C.D.Mass.1942, 43 F. Supp. 996;

Momand v. Twentieth-Century Fox Film Corporation, D.C.W. D.Okl.1941, 37 F.Supp. 649.

(f) Utah

Christensen v. Paramount Pictures, D.C.D.Utah, 1950, 95 F. Supp. 446.

24. City of Atlanta v. Chattanooga Foundry & Pipeworks Co., 6 Cir., 1903, 127 F. 23, 64 L.R.A. 721, reversing C.C.E.D.Tenn. 1900, 101 F. 900, affirmed sub nom. Chattanooga Foundry & Pipe Works v. City of Atlanta, supra.

25. American Banana Co. v. United Fruit Co., C.C.S.D.N.Y.1907, 153 F. 943; Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 1945, 148 F.2d 580, 582, certiorari denied 1945, 326 U.S. 734, 66 S.Ct. 42, 90 L. Ed. 437; The Derby Oil Co. v. Universal Oil Products Company, unreported (D. Kansas, August 26, 1938); Harvey v. Booth Fisheries Co. of Delaware, D.C. W.D.Wash.1915, 228 F. 782; Haskell v. Perkins, D.C.D.N.J.1928, 28 F.2d 222; Trebuhs Realty Co. v. News Syndicate Co., D.C.S.D.N.Y.1952, 107 F.Supp. 595, 599; Greer, Mills & Co. v. Stoller, C.C. W.D.Mo.1896; 77 F. 1, 3; Bigelow v. RKO Radio Pictures, 7 Cir., 1945, 150 F.2d 877, 883; Maltz v. Sax, 7 Cir., 1943, 134 F.2d 2, 4; Fleitmann v. Welsbach Street Lighting Co., 1916, 240 U.S. 27, 29, 36 S.Ct. 233, 60 L.Ed. 505; Schiffman Bros. v. Texas Co., 7 Cir., 1952, 196 F.2d 695; Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 1951, 190 F.2d 561, 570, certiorari denied 1952, 342 U.S. 909, 72 S.Ct. 302, 303, 96 L.Ed. 680; Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912, 914, certiorari denied 1952, 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704; Nicholas DeLuca v. Loew's Inc., D.C.N.D.Ill., —— F.Supp.

——, opinion by Judge Sullivan; Decorative Stone Co. v. Building Trades Council, 2 Cir., 1928, 23 F.2d 426, 427, certiorari denied 1928, 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005; Elizabeth Arden Sales Corporation v. Gus Blass Co., 8 Cir., 1945, 150 F.2d 988, 997, 161 A.L.R. 370; H. J. Jaeger Research Laboratories v. Radio Corp. of America, 3 Cir., 1937, 90 F.2d 826, 828.

26. In City of Atlanta v. Chattanooga Foundry & Pipe Co., C.C.E.D.Tenn.1900, 101 F. 900, the district court considered two actions brought to recover damages under Section 7 of the Sherman Act (Act of July 2, 1890, ch. 647; 26 Stat. 209). Following the decision of the Supreme Court in Addyston Pipe & Steel Co. v. United States, 1899, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136, plaintiffs alleged that, by reason of the unlawful combination, defendants had advanced the price of their steel pipe, and that plaintiffs were in consequence compelled to pay an exorbitant and unfair price. The defendants interposed as a defense the Tennessee statutes of limitation of one and three years as found in the Code of Tennessee (Shannon's Revisal), §§ 4469, 4470. The former section prescribed a limitation of one year to actions for statutory penalties and injuries to the person. The latter prescribed a limitation of three years for injuries to property, real and personal. To these pleas, plaintiffs demurred upon the ground that § 1047 of the Federal Revised Statutes applied to the action. That federal statute read:

"No suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained, except in cases where it is otherwise specially provided, unless the same is commenced within five years from the time when the penalty or forfeiture accrued * * *." [Now 28 U.S.C.A. § 2462]

The district court, relying upon Huntington v. Attrill, 1892, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123, held that the federal statute of limitations applied only to actions maintainable by the United States. It then proceeded to analyze the Tennessee statutes of limitation. It held that

for treble damages under the antitrust laws is not one to recover a statutory penalty or forfeiture within the meaning of Section 1047 of the Federal Revised Statutes [27] and appreciate that this ruling must be weighed with the holding that this statute applies only to actions brought by the Government. But it also was necessary for the Court to classify the suit as to its nature and type in order that decision might be made as to the particular Tennessee statute of limitations applicable. This was especially so since one of the statutes, Section 4469, Code of Tennessee, considered as possibly applicable, prescribed a limitation of one year for statutory penalties and injuries to the person; and another, Section 4470, Code of Tennessee, a three-year limitation "for injuries to personal or real property."

The Court of Appeals for the Sixth Circuit in Chattanooga, when considering the nature of the claims pleaded, wrote, 127 F. at page 28, 64 L.R.A. 721:

"We find ourselves in agreement with the court below in holding that an action under the seventh section of the act of July 2, 1890, c. 647, 26 Stat. 210 (U.S.Comp.St.1901, p. 3202), is not a penal action. * * * The seventh section alone gives any remedy to one injured by such a forbidden combination or contract, and that measures the relief by the 'damages by him sustained,' costs of suit,

the one-year statute, § 4469, was not applicable, construing the word "penalty" therein to mean the same as in the rejected federal statute. It held applicable the three-year statute, § 4470, which read as follows:

" 'Actions for injuries to personal or real property; actions for the detention or conversion of personal property, within three years from the accruing of the cause of action.' "

Specifically it held that the causes of action barred by Section 4470 included "every species of injury to personal property included in the more general or collective name of torts or civil wrongs." 101 F. at page 910.

The appeal was heard by a Circuit Court of Appeals, including Circuit Judge Lurton, who wrote the opinion, and who had theretofore been a Justice and Chief Justice of the Supreme Court of Tennessee. The Circuit Court of Appeals (6 Cir., 1903, 127 F. 23, 64 L.R.A. 721) agreed that Section 1047, supra, was not applicable and that the one-year Tennessee statute of limitations was also not applicable. The Circuit Court of Appeals then held that the cause of action was not one for an injury to property within the meaning of the Tennessee three-year statute, Section 4470. It pointed out that the English Statute of 21 James I, c. 16, operated upon the form of action and was therefore no longer applicable in Tennessee, where the rule had been adopted that the statute of limitations applicable depends upon the nature and character of the action, not upon its form. The court concluded that the ten-year Tennessee statute, § 4473, the catch-all provision, applied.

The Supreme Court of the United States granted certiorari. The unanimous opinion of the Court was written by Mr. Justice Holmes and is reported sub nom. Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 66, 51 L.Ed. 241. The Supreme Court held that the limitation of five years in the Federal Revised Statutes, Section 1047, to any "suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States" did not apply, relying upon Huntington v. Attrill, 1892, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123, and Brady v. Daly, 1899, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109. The Supreme Court concurred with the Circuit Court of Appeals that the plaintiffs' cause of action fell within the catch-all statute (Code of Tennessee [Shannon's Revisal], § 4473), saying, 203 U.S. at page 398, 27 S.Ct. at page 66:

"Although the decision is appealed from, as this question involves the construction of local law we cannot but attribute weight to the opinion of the judge who rendered the judgment, in view of his experience upon the supreme court of Tennessee."

27. Section 2462, 28 U.S.C.A. provides:
"Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

and his reasonable attorney's fees. The remedy is not given to the public, for no one may bring the action save the person 'who shall be injured,' etc., and the recovery is for the sole benefit of the person so injured and suing. It is not reasonable to construe the remedy so conferred as a penal action, for that would be to add to the punishment by fine or imprisonment imposed by the other sections of the act an additional punishment by way of pecuniary penalty. The plain intent is to compensate the person injured."

The ruling of the court which follows, 127 F. at page 29,

"True, the compensation is to be three times the damage sustained. But this enlargement of compensation is not enough to constitute the action a penal action, within the meaning of section 1047, Rev.St. (U.S.Comp.St.1901, p. 727)",

did not render the holding which preceded it mere dictum, for it was a holding as to the nature of the action and was necessary to the ultimate decision reached.

Judge Cardozo so read Chattanooga and wrote in Cox v. Lykes Brothers, 237 N.Y. 376, at pages 379–380, 143 N.E. 226, at page 227:

"In harmony with this ruling are decisions of the Supreme Court of the United States, excluding from the class of penalties an action against the infringer of the copyright of a dramatic composition, who must pay not less than $100 for the first and $50 for every subsequent performance (Brady v. Daly, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109), and an action under the anti-trust law for the recovery of treble damages. (Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, affirming 127 F. 23, 64 L.R.A. 721)."

In Sullivan v. Associated Billposters and Distributors, 2 Cir., 1925, 6 F.2d 1000, 42 A.L.R. 503, where the question presented was whether a claim for treble damages under Section 7 of the Sherman Act, which is now Section 15, Title 15 U.S.C.A., survived against the estate of a defendant who had died pending litigation, the court said, 6 F.2d at page 1009:

"The provisions * * * are clearly remedial. * * * A statute may be penal in one part and remedial in another. If a statute which is penal in part gives a remedy for an injury to the person injured to the extent that it gives such a remedy it is a remedial statute, irrespective of whether it limits the recovery to the amount of actual loss sustained or as cumulative damages as compensation for the injury."[28]

It was to this punitive portion of Section 7 (now Section 15) allowing treble damages that Mr. Justice Holmes referred ten years after the Chattanooga decision in Fleitmann v. Welsbach Street Lighting Co., 1916, 240 U.S. 27, at page 29, 36 S.Ct. 233, at page 234, 60 L.Ed. 505 when he wrote:

"* * * we agree with the courts below that when a penalty of triple damages is sought to be inflicted, the statute should not be read as attempting to authorize liability to be enforced otherwise than through the verdict of a jury in a court of common law."

This was not an abandonment of his opinion in Chattanooga that a suit brought under Section 7 (now Section 15) was not a penalty. Nor do I read Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912, certiorari denied 1952, 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704, as giving to Chattanooga a different interpretation. There, the court was considering an Illinois statute which provided, *inter alia*, that actions to recover damages for a

---

28. See also: Baush Mach. Tool Co. v. Aluminum Co. of America, 2 Cir., 1933, 63 F.2d 778; State of Oklahoma ex rel. Phillips v. American Book Co., 10 Cir., 1944, 144 F.2d 585; Hicks v. Bekins Moving & Storage Co., 9 Cir., 1937, 87 F.2d 583; United States v. Joles, D.C. Mass.1917, 251 F. 417.

"statutory penalty" shall be commenced within two years (Ill.Rev.Statutes, Chap. 83, § 15); following Chattanooga, the court examined the state decisions to ascertain what type actions were affected by the state statute. It concluded that the state decisions indicated that under Illinois law, whenever a suit was for an amount greater than the actual, compensatory damages, it was deemed one brought to recover a penalty within the Illinois statute. This was entirely in accord with Chattanooga.

In United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 1916, 232 F. 574, 575, at page 577, the court noted:

"There can, of course, be no pretense that section 7 of the Sherman Act provides a penalty. It awards civil damages, which are made exemplary by virtue of being trebled."

■ The conclusion I have reached as to the nature of a suit brought under Section 15 (Section 7 of the Sherman Act) was expressed by the court in Strout v. United Shoe Machinery Co., D.C.Mass.1912, 195 F. 313, at page 317, when it wrote:

"It is not in its nature and substance a penal action; its vindication does not rest with the state; it has been held repeatedly to be a civil remedy for private injury, compensatory in its purpose and effect. It provides for the recovery of threefold damages sustained by the plaintiff, which are held to be exemplary damages. People's Tobacco Co. v. American Tobacco Co., [5 Cir.] 170 F. 396, 95 C.C.A. 566; City of Atlanta v. Chattanooga Foundry & Pipe Co. (C.C.), 101 F. 900; Huntington v. Attrill, 146 U.S. 657, 13 S. Ct. 224, 36 L.Ed. 1123; Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815."

And, I find that attempting to analyze the "free-wheeling utterances"[29] in the Congressional Record to ascertain the elusive Congressional intent is neither necessary nor helpful, for the statute which grants plaintiffs the right to file this suit is in plain and understandable language.

Having so determined the essential nature of the suit, I turn to consider the second aspect of the problem—what New York statute of limitations would the New York courts hold applicable to this type or class of claims?

The question now presented is whether a suit to enforce a private right granted by statute for three times the damage sustained by reason of acts declared to be unlawful—a suit which provides a civil remedy for individual injury, compensatory in purpose and effect—would be held by New York courts to be an action for a penalty within the meaning of Section 49(3), or one to recover upon a statutory liability, except a penalty or forfeiture, within the meaning of Section 48(2) of the New York Civil Practice Act.

■ The New York decisions recognize a distinction between (a) damages which are entirely compensatory; (b) those which are exemplary but related to the actual damage (Layton v. McConnell, 2d Dept. 1901, 61 App.Div. 447, 70 N.Y.S. 679; Syfert v. Lenett Realty Corp., Sup. Ct. Kings Co. 1925, 124 Misc. 871, 209 N.Y.S. 555); and (c) those which are in the nature of a statutory penalty. The line of demarcation between (b) and (c) determines what statute applies to this suit. I find this to be the rule: under New York law, when recovery may be had not only for the actual monetary damage but also for three times this amount and this treble recovery is incidental to and dependent upon the verdict returned and the operation of law, the suit is not deemed one for a statutory penalty as the term is used in Section 49(3).

I am asked to accept as authority to the contrary Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., supra, where

29. Frankfurter, J. in United States v. Public Utilities Commission, 1953, 345 U.S. 295, 321, 73 S.Ct. 706, 720.

the Illinois statute applicable to penalties was applied. There, however, the statutes establishing periods of limitation differed from those of New York, especially in that there was no provision analogous to Section 48(2). Of necessity, consequently, the Illinois statute in question, Ch. 83, § 15, Ill.Rev.St.1951, which uses the word "penalty" [30] was broadly interpreted to include a suit which would be covered by Section 48(2) if brought in New York.[31]

The distinction between damages which while exemplary are directly related in amount to the actual damage, and those which are entirely punitive and penal, as pointed out in Layton v. McConnell and Syfert v. Lenett Realty Corp. has been applied not only to suits arising under New York statutes but also to those under federal statutes.

In Di Bitetto v. Sussman, App.Div. 2d Dept.1952, 279 App.Div. 1033, 112 N.Y.S. 2d 356, 357, an action brought under Section 205(e) of the Federal Emergency Price Control Act of 1942,[32] the court wrote:

"The statute is to be interpreted as consistent with Federal court decisions; and accordingly the action is for damages and not for a penalty. United States v. Harris, D.C., 89 F. Supp. 537; Porter v. Montgomery, 3 Cir., 163 F.2d 211; Fields v. Washington, 3 Cir., 173 F.2d 701. It follows that summary judgment is not prohibited by subdivision 3 of Rule 113, Rules of Civil Practice. Von Doemming v. Cross, Sup., 81 N.Y.S.2d 35; Wachtel v. Schelberg, 186 Misc. 406, 59 N.Y.S.2d 846, and several other cases similarly decided, did not consider the Federal court interpretations of the statute. The papers establish that the granting of the motion for summary judgment was not proper inasmuch as appellant is entitled to prove that the violation was not wilful."

█ The law of New York as stated by the Appellate Division in this case must be accepted rather than those decisions following Wachtel v. Schelberg, 186 Misc. 406, 59 N.Y.S.2d 846, which was decided by the City Court of the City of New York. That there was in the New York Supreme Court prior to the Di Bitetto case a difference of opinion is revealed in Von Doemming v. Cross, Sup.N.Y.Co.1948, 81 N.Y.S.2d 35, and Stein v. Aintablian, Sup. Onondaga Co. 1950, 100 N.Y.S.2d 90. The Appellate Division of the Supreme Court, Second Department, which decided Di Bitetto, is a court superior in jurisdiction to both the City Court and trial and special terms of the Supreme Court. In Di Bitetto, the court accepted the nature of the action as determined by the federal court and noted, in rejecting the holding of Wachtel, that the lower court "did not consider the Federal court interpretations of the statute." [33]

30. This statute provides that "actions for damages * * * for a *statutory penalty,* * * * shall be commenced within two years next after the cause of action accrued."

31. Schiffman Bros. v. Texas Co., 7 Cir., 1952, 196 F.2d 695.

32. This section provides that in any action under this subsection, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is greater: (1) Such amount not more than *three times* the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. 50 U.S.C.A.Appendix, § 1895.

33. Particularly did the City Court and the decisions following it overlook the statement in Kessler v. Fleming, 9 Cir., 1947, 163 F.2d 464, at page 468:

"It is reasonably clear that Congress imposed the sanction as a measure of civil redress. As observed in Crary v. Porter, 8 Cir., 157 F.2d 410, 414, increased or

Any doubt as to what limitation period the New York courts would apply to the instant suit should the occasion ever arise by Congressional grant of concurrent jurisdiction to the state courts, is removed upon consideration of the New York decisions as to the statute applicable to actions brought under Section 16 (b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b).[34]

There is no essential difference between the nature of the incidental recovery of treble damages given by the antitrust laws and the incidental recovery "as liquidated damages" given by the Fair Labor Standards Act. The multiple damages provided for in both statutes can only be determined after a finding has been made as to the actual damage sustained. The federal courts have determined that an action brought under either statute is not penal and that the recovery of compensatory damages thereunder is not rendered penal by reason of the provision for multiple or exemplary damages.

I conclude that the statutory right of action to recover treble damages under the antitrust law is not an action for recovery of a penalty within the meaning of the three-year statute, Section 49(3), N. Y. Civil Practice Act, as this statute has been construed by the New York courts, but that it comes within the limitation of the six-year statute, Section 48(2).

This brings us to consideration of the question:

*During what period was the suit of United States v. Paramount pending within the meaning of Section 5 of the Clayton Act, 15 U.S.C.A. § 16?*

The second paragraph of Section 5 of the Clayton Act providing for the suspension of "the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended *during the pendency thereof*", must be read and interpreted in light of the first paragraph which provides that the final judgment entered in such suit "to the effect that a defendant has violated said laws shall be *prima facie* evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto * * *." It is clear that the Congress intended that antitrust suits should be considered "pending" until the entry of a judgment or decree which finally disposes of all the allegations of antitrust violations.

Mere reservation in a final decree of the right of either of the parties to apply for a modification required by changed conditions which make further operations under the decree as

multiple damages are not authorized to be assessed under § 205(e) of the Act as a substitute for criminal punishment. Criminal sanctions for violations are separately provided for in § 205(b) * * * Multiple or exemplary damages whose allowance depends upon the recovery of actual damages, have never, so far as we are aware been regarded as amounting to a criminal penalty. The view that the treble damage sanction is remedial rather than punitive has been taken in other cases aside from Crary v. Porter, supra."

34. Section 216(b), 29 U.S.C.A. provides:
   "(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of

their *unpaid minimum wages*, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages*. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

drawn unjust or inequitable, does not change its final character. This equitable power to modify resides in the court at all times.[35] The reservation applies only to the measure of injunctive or directive relief; it does not disturb the adjudication of the allegations of antitrust acts.

"The final judgment that is contemplated by Section 5 of the Clayton Act, supra, is a judgment that is in effect 'res judicata' of all the issues in an antitrust action, and not such as is only a partial determination of some of the issues." Dickinson v. Twentieth Century-Fox Film Corp., unreported, D.C.W.D.Mo., March 7, 1949. There must be no allegation of wrongdoing reserved for determination in the action.

In Berman v. United States, 1937, 302 U.S. 211, 213, 58 S.Ct. 164, 166, 82 L.Ed. 204, it was held that a decree was final " 'when it terminates the litigation * * on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined' "; and, in John Simmons Co. v. Grier Bros. Co., 1922, 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L. Ed. 475, the Court said that a final decree was "one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it."

The consent decree of November 20, 1940, was to operate for a "trial period of three years." It held further proceedings in the suit against the consenting defendants in abeyance during that time. The suit continued pending, although as to them quiescent. The provision with respect to arbitration (Articles V through X of the decree of November 20, 1940) has been held not to be "a permanent system of arbitration". 334 U.S. 176, 68 S.Ct. 938, 92 L.Ed. 1260.

Section XXIII, subdivision (d) provided that any party might apply at any time more than three years after the date of the decree for any modification of it. It was exactly this course which was followed by the Government when on August 7, 1944 it moved for a modification of the decree. This motion was not pressed by the Government. It was followed by the Government's motion, heard on March 5, 1945, to set the suit down for trial.

The order of Judge Goddard of March 5, 1945, granting the application of the Government, set the suit down for trial upon the merits. What followed was indeed a trial of all the issues raised by the amended and supplemental complaints and answers.

It appears undisputed that on the trial of Fifth and Walnut, Inc. v. Loew's Inc., Judge Leibell ruled that the decree of November 20, 1940 did not terminate the pendency of the Paramount suit. He held

" * * * that the statute was tolled by the pendency of this Paramount suit in this court, and it was so tolled at least up to the time that the plaintiffs' action that we have been trying here was started on July 11, 1946, and that is all we are concerned with". Trial Record, p. 2100a aff., 2 Cir., 176 F.2d 587.

And, further with reference to the decree of December 31, 1946, he ruled

"We have therefore this situation: that there was a final decree in this case, the one of December 31, 1946, and it has been reversed. That much

---

35. This was pointed out by Judge Cardozo in United States v. Swift & Co., 1932, 286 U.S. 106, at page 114, 52 S.Ct. 460, at page 462, 76 L.Ed. 999:

"We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent * * *. Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * * The result is all one whether the decree has been entered after litigation or by consent."

is clear. So it is no longer the final decree. And that being so, I don't see how, under Section 16 of the anti-trust laws, you have the right to offer any part of that record as prima facie evidence of anything in this action". Trial Record, p. 2108a.

Writing of the decree of November 20, 1940, the court in Christensen v. Paramount Pictures, D.C.Utah, 1950, 95 F. Supp. 446, noted at page 454:

"This consent decree involved no adjudication, no merger, and was not res adjudicata as to any issue raised by the complaint. Surely, such decree provides a most insecure foundation for private rights of action 'based in whole or in part on any matter complained of' in United States v. Paramount. * * * If the statute is not suspended, the plaintiff has no sure basis for recovery on his private right of action under such a decree."

And, in Twentieth Century-Fox Film Corp. v. Brookside Th. Corp., 8 Cir., 1952, 194 F.2d 846, at pages 857–858, the court held:

"We think it clear that the consent decree entered in the Paramount case was not in reality a final decree. It certainly did not terminate the litigation and it was not intended as a final decree terminating the litigation. The consent decree entered in the Paramount case reserved to the United States the right at the end of a three year trial period to seek the relief prayed for in the amended complaint. At the end of the three year period the United States moved for trial against all the defendants. We conclude that the Paramount case was pending until the final decree entered therein was either affirmed by the Supreme Court or the time for appeal had expired. The statute of limitations was therefore not available to the defendants."

In all the litigation which has followed Paramount, no court has held that the consent decree of November 20, 1940 terminated that suit within the meaning of the provisions of Section 5 of the Clayton Act, 15 U.S.C.A. § 16. Indeed, the court which tried the action held to the contrary in the following language:

"Counsel for the five major defendants and their subsidiaries contend that the consent decree has, in some respects at least, the effect of a final judgment which may not be modified. But we cannot see how such a position is consistent with the language of Section XXIII(d), which permits ' * * * any of the parties to this decree to apply to the Court at any time more than three years after the date of the entry of the decree for any modification thereof.' That period has expired, and therefore everything relating to rights under and remedies for violation of the Sherman Act is, therefore, open for consideration, even as between consenting parties; and certainly nothing has hitherto been decided which affected the non-consenting parties." D.C.S.D.N.Y.1946, 66 F.Supp. 323, 333.

With this conclusion reached, the expediting court then proceeded to determine all the issues raised by the pleadings. The trial court made findings of fact and conclusions of law and entered a decree dated December 31, 1946. It concluded:

"The consent decree entered herein on November 20, 1940, does not foreclose enforcement in this suit at this time of any rights or remedies, which the plaintiff may have against any of the defendants by virtue of violations of the Sherman Act by them, except such acts as were in accord with such decree during the period it was in force." D.C.S.D. N.Y.1947, 70 F.Supp. 53, 71, conclusion of law #4.

The Supreme Court later noted, 334 U.S. 131, 141, 68 S.Ct. 915, 921, 92 L.Ed. 1260, footnote 3:

"Before trial, negotiations for a settlement were undertaken. As a result, a consent decree against the five major defendants was entered

November 20, 1940. The consent decree contained no admission of violation of law and adjudicated no issue of fact or law, except that the complaint stated a cause of action. The decree reserved to the United States the right at the end of a three-year trial period to seek the relief prayed for in the amended complaint. After the end of the three-year period the United States moved for trial against all the defendants."

Judge Clark, considering the decree entered in Paramount of December 31, 1946, wrote in Fifth and Walnut, Inc. v. Loew's, Inc., 2 Cir., 1949, 176 F.2d 587, at page 593, certiorari denied 338 U.S. 894, 70 S.Ct. 242, 94 L.Ed. 549, rehearing denied 338 U.S. 940, 70 S.Ct. 347, 94 L.Ed. 580.

"While the issue has not been finally and authoritatively determined, yet both the statutory wording and the existing precedents require a definite terminus of the litigation. Thus the statute explicitly requires 'a final judgment or decree' and does not refer, for example, to a final decision— a point of contrast made recently in the Supreme Court with respect to appealable orders. Cohen v. Beneficial Industrial Loan Corp., 1949, [337 U.S. 541] 69 S.Ct. 1221 [93 L.Ed. 1528]. It must obviously be so far final that the rules of estoppel by judgment apply. Restatement, Judgments, § 41 and comments, a, d, and e, § 68 and comments, 1942."

In fact, the record in the Paramount suit shows that the appealing defendants assigned as error (assignment of error No. 34), that portion of the decree which provided in Section V that the consent decree of November 20, 1940 should be of no further force or effect, except insofar as it might be necessary to conclude arbitration proceedings then pending. The Supreme Court, however, affirmed with certain modifications not here relevant. 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260

I conclude that the decree of February 8, 1950, terminated the Paramount suit as to the defendants, Universal, United Artists and Columbia, who filed no appeal, and that it became final on April 8, 1950, when the period for filing an appeal expired. As to defendants, Loew's, Fox and Warner, who appealed the decree of February 8, 1950, the Paramount suit was terminated on October 16, 1950 when the Supreme Court denied the petitions for rehearing. 340 U.S. 857, 71 S.Ct. 70, 95 L.Ed. 627.

Pursuant to the judgment of November 8, 1948, RKO Pictures Corporation and RKO Theatres Corporation were organized on November 20, 1949 and acquired certain assets of Radio-Keith-Orpheum Corporation, which was then dissolved.

Pursuant to the judgment of March 3, 1949, Paramount Pictures Corporation and United Paramount Theatres, Inc. (now known as American Broadcasting-Paramount Theatres, Inc.) were organized on November 15, 1949 and acquired certain assets of Paramount Pictures Inc., which was then dissolved.

Plaintiffs have consented to dismissal of the RKO defendants. The motion to dismiss made by the two new Paramount corporations is granted. United States v. William S. Gray & Co., D.C. S.D.N.Y.1945, 59 F.Supp. 665. The statute of limitations had run against the plaintiffs as to everyone not a party to United States v. Paramount Pictures by September 1, 1941. A continuing conspiracy is not alleged; no injury on the claims pleaded was sustained by plaintiffs after September 1, 1935; these successor corporations were not then in existence. It is not determined whether, by reason of receipt of assets or by an expressed assumption, they may eventually be held liable for the acts of their predecessor corporations if such liability is established.

The suit is also dismissed as to the nonexistent Columbia Pictures Distributing Corporation.

There appears no just reason for delay in the entry of judgment dismissing this suit as to these defendants and the clerk is directed to enter judgment accordingly, Rule 54, F.R.C.P., 28 U.S.C.A.

There remains but mathematical computation to ascertain whether this suit was timely brought. Defendants have submitted a chart [36] showing the dates of some pertinent events. I find the following:

A. That plaintiffs sold their interest in the Leonia Theatre on September 1, 1935; on this date the statute of limitations began to run.

B. That the Paramount suit was filed July 20, 1938; as of that date the statute of limitations was tolled after having run a period of two years, ten months and nineteen days.

C. That the Paramount suit terminated as to Universal, United Artists and Columbia on April 8, 1950.

D. That the Paramount suit terminated as to Loew's, Fox and Warner on October 16, 1950.

E. That the Paramount suit terminated as to the defendant Paramount Pictures, Inc. on April 21, 1949 when the order severing that defendant from the action was entered.

F. That this suit was commenced on April 1, 1952; that as to the defendants named in (C) one year, eleven months and twenty-two days elapsed between the termination of the paramount suit and the institution of plaintiffs' suit; as to the defendants named in (D) one year, five months and fifteen days; and as to the defendant named in (E) two years, eleven months and ten days.[37]

**36.**

CHRONOLOGY

**37.** Since the Paramount suit was pending during the effective period of the Wartime Tolling Act (56 Stat. 781, amended 59 Stat. 306, 15 U.S.C.A. § 16 note) con-

I conclude that this suit is timely brought since the total elapsed time as to defendants in (C) was four years, ten months and eleven days, as to defendants in (D), four years, four months and four days, and as to defendant in (E) five years, nine months and ten days.[38]

I conclude that the defense of the statute of limitations falls.

### Amended Opinion

This suit was before me on a separate trial of the defense of the statute of limitations. Two of the defendants, Paramount Pictures, Inc. and Paramount Film Distributing Corporation now move under Rules 59 and 60 to amend the opinion of this court of October 20, 1953 by striking from finding "E" the date April 21, 1949 and inserting in lieu thereof March 3, 1949.

The finding as made reads:

"E. That the Paramount suit terminated as to the defendant Paramount Pictures, Inc. on April 21, 1949 when the order severing that defendant from the action was entered."

The decree of March 3, 1949 in United States v. Paramount provided in Paragraph I that the complaint was dismissed and in Paragraph IX A it contained the following provision:

"This judgment is rendered and entered in lieu of and in substitution for the decree of this Court dated December 31, 1946. This judgment shall be of no further force and effect and this cause shall be restored to the docket without prejudice to either party if the proposed reorganization of the Paramount defendants shall not have been approved by the stock-

holders of Paramount Pictures, Inc. prior to April 19, 1949."

Thereafter, on April 21, 1949 an order was entered containing the following:

"Now, on reading and filing the annexed affidavit of Robert H. O'Brien, sworn to on April 20, 1949, from which it appears that the said proposed reorganization was approved by the stockholders of Paramount Pictures, Inc. prior to April 19, 1949, it is

"Ordered, adjudged and decreed that the above entitled action be and the same hereby is severed and terminated as against the defendants Paramount Pictures, Inc. and Paramount Film Distributing Corporation as of the 3rd day of March, 1949."

The sole question presented on this motion is on what date the suit of United States v. Paramount (S.D.N.Y.Eq. No. 87–273) ceased to be pending as against the Paramount defendants within the meaning of Section 5 of the Clayton Act. There are three possibilities:

(1) the date of the entry of the decree of March 3, 1949;

(2) the date the stockholders approved the reorganization—April 12, 1949; or

(3) the date the Expediting Court was officially apprised of such approval—April 21, 1949.

Plaintiff urges the third alternative—April 21, 1949; defendants Paramount urge the first alternative—March 3, 1949, and in lieu of this, the second,—April 12, 1949. Defendants contend that paragraphs "I" and "IX A" of that decree in juxtaposition evince an intent on the part of the court that

---

sideration of the applicability of this act to this suit is unnecessary.

38. The ultimate issue presented at this separate trial is whether the claims pleaded are barred in toto as to each particular defendant. Factual findings as to when the statute was tolled subsequent to September 1, 1935 have been made only because necessary to decision. Whether any defendant may be held liable for wrongful

acts committed within a specific period, be it of short or long duration, is reserved for later determination. This must be so for I have concluded that the defense of the statute of limitations must fall as to all except the RKO defendants and because the defendants have conceded that the statute was suspended during the pendency of the Paramount suit only for the purpose of this separate trial.

the decree be a final determination of the rights of the parties with a condition subsequent which might revive the litigation. In the alternative, they argue that the decree terminated the suit as to them on the doing of the acts provided for in "IX A" within the time specified, without the necessity of further judicial action. Plaintiff contends that the decree became a final determination of the rights of the parties only on the entry of the subsequent order of April 21, 1949 which severed these defendants from the principal action.

"Section 5 of the Clayton Act was adopted in response to a recommendation by President Wilson that Congress 'agree in giving private individuals * * * the right to found their (antitrust) suits for redress upon the facts and judgments proved and entered in suits by the Government where the Government has * * * sued the combinations complained of and won its suit * * *.'" Emich Motors Corp. v. General Motors Corp., 1950, 340 U.S. 558, 567–568, 71 S.Ct. 408, 413, 95 L.Ed. 534.

Congress gave private litigants the benefit of a final judgment in a government suit or prosecution by providing that it might be offered as prima facie proof of a violation of the antitrust laws. Such a judgment to be *res judicata* between the Government and a defendant as to the existence of such violation must be a final judgment. To hold that a private plaintiff must rely for this proof upon a judgment which is not absolutely final is to require him to assume the risk that further proceedings in the government suit or prosecution will leave him without this proof. This is incompatible with the intent to confer "as large an advantage as the estoppel doctrine would afford had the Government brought suit." Emich Motors Corp. v. General Motors Corp., supra, 340 U.S. at page 568, 71 S.Ct. at page 414. For the purpose of Section 5 there was no final judgment in the Paramount action as to these defendants until April 12, 1949, the date the stockholders approved the reorganization plan, for by its very wording the decree of March 3, 1949 was not to become final until this approval had been given. Although that decree has been referred to as a "consent decree", the "consent" of the Paramount defendants was not in fact given until the approval by its stockholders on April 12, 1949. The court by its decree did more than retain jurisdiction to enforce the terms of its order; it retained jurisdiction to adjudge the merits of the suit itself if it should become necessary by reason of failure of approval by the stockholders. That jurisdiction remained with the court through April 12, 1949, for until that date the order of March 3, 1949, was "still open to modifications, * * * and rehearing". Craig v. Hecht, 1923, 263 U.S. 255, 270, 44 S.Ct. 103, 104, 68 L.Ed. 293, affirming Ex parte Craig, 2 Cir., 282 F. 138.

■ What then was the effect of the *nunc pro tunc* order of April 21, 1949? As between parties to the litigation it rendered the judgment of March 3, 1949 conclusively effective as of that date. Except as to the rights of third parties a judgment of this nature is retroactive and has the same force and effect, to all intents and purposes, as if it had become effective on the date stated. Wolfe v. Murphy, 8 Cir., 113 F.2d 775, certiorari denied 311 U.S. 700, 61 S.Ct. 138, 85 L.Ed. 454. A court may not, however, by the entry of a judgment *nunc pro tunc* withdraw rights from one not a party to the litigation. In re Ackermann, 6 Cir., 82 F.2d 971.

Motion is granted and finding "E" is amended by substituting for the date April 21, 1949 that of *April 12, 1949;* finding "F" is amended to provide that as to the Paramount defendants two years, eleven months and *one* day elapsed, and the concluding paragraph is amended to read "and as to defendant in (E) five years, ten months and eight days."